1   Esperanza Cervantes Anderson (SBN: 197953)
2   LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
3   1037 North Allen Avenue
    Pasadena, California 91104
4   Telephone: (626) 486-2477
    Facsimile: (626) 389-8911

6   Attorneys for Plaintiff,
7   DAVID LILLIE

8           UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT OF CALIFORNIA

10

11  **DAVID LILLIE,**                    CASE NO. 2:17-CV-2538

12                  *Plaintiff.*         **COMPLAINT FOR**
                                         **DAMAGES / DEMAND FOR**
13          vs.                          **JURY**

14

15

16  **MANTECH INT'L. CORP., a**
    **Delaware Corporation, and**
17  **DOES 1-20,**

18                  *Defendants.*

19

20

21

22

23

24

25

26

27

28

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

<div style="text-align:left">LAW OFFICE OF ESPERANZA CERVANTES ANDERSON<br>PASADENA, CALIFORNIA</div>

## PRELIMINARY STATEMENT

Defendant ManTech International Corp. ("ManTech" or "Defendant") fired Plaintiff David Lillie ("Plaintiff") because he reported to ManTech his knowledge of unauthorized access to classified/proprietary information owned by a United States defense contractor. Plaintiff also reported to the Ethics Enforcement Division of Caltech's Jet Propulsion Lab ("JPL"), a federally funded research and development center with whom ManTech contracted to provide services. Plaintiff reported these concerns solely in attempt to remedy them. Plaintiff brings this action against ManTech for retaliation and wrongful termination in violation of the False Claims Act, 31 U.S.C. § 3730(h), California Labor Code § 1102.5, for breach of contract, and breach of the implied covenant of good faith and fair dealing. Although ManTech asserted that its decision to lay off Plaintiff was based on economic reasons, ManTech had retaliatory motives and the proffered purpose was false and pretextual. In fact, ManTech was motivated to terminate Plaintiff in retaliation for expressing his good faith concerns about unlawful conduct to management. In so doing, ManTech also breached its enforceable promise with Plaintiff to *not* retaliate for his good faith reporting.

## NATURE OF ACTION

1.     Plaintiff brings this action for unlawful retaliation and other unlawful conduct against his former employer, ManTech International Corp. (hereinafter, with its divisions, "ManTech" or the "Defendant").

2.     Plaintiff worked for ManTech as a senior engineer from 2007 to the time of his termination on February 6, 2015. His contributions to ManTech were described over time as outstanding and critical to ManTech's business successes in supplying highly-skilled engineers to JPL.

1   Consistently, Plaintiff was acknowledged by his peers at ManTech and
2   JPL as a smart and dedicated engineer. He was consistently judged at the
3   highest rankings in his periodic evaluations and materially rewarded for
4   his work.

6                               **PARTIES**

7       **3.**      Plaintiff is an individual who resides in Los Angeles County,
8   California.

9       **4.**      Defendant ManTech is a Delaware corporation, authorized
10  to do business in California, with a place of business at 2550 Honolulu
11  Avenue, Suite 201 Montrose, California 91020. Per the most recent public
12  filing submitted to the the Securities and Exchange Commission, ManTech
13  now employs approximately 7,000 persons and "provides technologies and
14  solutions for mission-critical national security programs for the Intelli-
15  gence Community; the Departments of Defense, State, Homeland Security,
16  Health and Human Services, Veterans Affairs and Justice, including the
17  Federal Bureau of Investigation; the space community; and other U.S. gov-
18  ernment customers." (Form 8-K, filed on Nov 7, 2016: "About ManTech
19  International Corporation." Retrieved from http://investor.mantech.com)

20      **5.**      The true names and capacities of Doe Defendants 1 through
21  20, inclusive, are unknown to Plaintiff, who therefore sues them by their
22  fictitious names. Plaintiff is informed and believes, and on that basis
23  alleges, that Doe Defendants 1 through 20 are legally responsible in some
24  manner for the events and happenings alleged in this complaint, and
25  legally caused injury and damage to Plaintiff as alleged herein. Plaintiff
26  will amend the complaint to include the names and capacities of the Doe
27  Defendants as their identities and roles become known.

28      **6.**      Plaintiff is ignorant of the true names and capacities, whether

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

1   individual, corporate, or associate, of those defendants fictitiously sued as
2   Does 1 through 20 inclusive and so Plaintiff sues them by these fictitious
3   names. Plaintiff is informed and believes that each of the DOE defendants
4   is in some manner responsible for the conduct alleged herein. Upon discov-
5   ering the true names and capacities of these fictitiously named Defendants,
6   Plaintiff will amend this complaint to show the true names and capacities
7   of these fictitiously named defendants.

8
9                          **JURISDICTION**

10      **7.**     Count I is a civil action by Plaintiff under the "whistle-
11   blower protection" provision of the Federal False Claims Act, 31 U.S.C.
12   § 3230(h). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 31
13   U.S.C 3730(h) and 3732(a).

14      **8.**     Count II is a civil action by Plaintiff under the "whistle-
15   blower protection" provision of the National Defense Authorization Act,
16   10 U.S.C. § 2409. This Court has jurisdiction pursuant to 28 U.S.C. §10
17   U.S.C.  2409(c)(2).

18      **9.**     Count III is a civil action by Plaintiff under the "whistle-
19   blower protection" provision under California Labor Code § 1102.5. This
20   Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 and
21   31 U.S.C. § 3732.

22      **10.**     Count IV is a civil action for breach of contract for violating
23   ManTech's "pledge" to protect any employee making a good faith report
24   from "any" type of retaliatory action.  This Court has supplemental
25   jurisdiction pursuant to 28 U.S.C. § 1367.

26      **11.**     Count V is a civil action for breach of the implied covenant
27   of good faith and fair dealing when violating ManTech's "pledge" to
28   protect any employee making a good faith report from "any" type of

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

1 retaliatory action. This Court has supplemental jurisdiction pursuant to
2 28 U.S.C. § 1367.

3     **12.** All administrative prerequisites have been met for maintain-
4 ing this action and federal question jurisdiction properly lies with this
5 Court.

6

7                               **VENUE**

8     **13.** Venue is proper pursuant to 31 U.S.C. § 3732(a) because de-
9 fendants can be found in, and transact business in the Central District of
10 California and the violations of 31 U.S.C. § 3729 described herein occurred
11 within this judicial district.

12

13                               **FACTS**

14     **14.** In February of 2007, Plaintiff was offered the position of
15 Reliability Engineer Analyst with ManTech, based in Montrose, California.
16 Hired to serve as a key technical member of ManTech's Mission Solutions
17 & Services Group, Plaintiff's job at ManTech was to provide engineering
18 support in fulfillment of the NASA Jet Propulsion Laboratory and Cali-
19 fornia Institute of Technology Reliability Engineering Support Services
20 ("RESS") contract.

21     **15.** As a key technical member of ManTech's Mission Solutions
22 & Services Group, Plaintiff directly supported JPL's 5131 Product &
23 Circuit Reliability Engineering Group on the Mars Science Laboratory
24 project ("MSL"), Soil Moisture Active Passive ("SMAP") project, Juno
25 project (a Jupiter orbiter mission) and various others.

26     **16.** While at ManTech, Plaintiff performed reliability assess-
27 ments, circuit modeling, electronic parts stress analysis, worst-case circuit
28 analysis, and single events/effects analysis. He provided MSL, SMAP

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

1   and Juno MAMs ("Mission Assurance Managers"), CogEs ("Cognizant
2   Engineers") and PEMs ("Project Element Managers") analysis, author-
3   ing thorough reports and detailed recommendations. While at ManTech,
4   Plaintiff further performed and reviewed reliability analyses; assessed
5   performance with respect to requirements; evaluated failure reports and
6   analyses, and corrective action implementations; established reliability
7   models for use in models for systems and subsystems analysis; and used
8   computer aided engineering tools such as PSpice, MathCAD, MatLab,
9   and others.

10       17.    While at ManTech, Plaintiff supported various design teams
11   and recommended design changes, providing significant positive impact
12   for the MSL, SMAP and Juno projects. He repeatedly demonstrated his
13   ability to leverage his many years of design experience to the MSL, SMAP
14   and Juno projects by recommending necessary and critical design changes
15   that materially mitigated reliability issues identified through his circuit
16   modeling and reliability analyses.

17       18.    Within the first two weeks of his tenure at ManTech, Plaintiff
18   was formally recognized for his success in the job for finding a major design
19   flaw. Had this issue not been identified, the MSL mission may have resulted
20   in a crash landing on the surface of Mars. Recognizing the value and
21   contribution of Plaintiff's work, JPL's George Greanias said of Plaintiff
22   (with specific reference to the Mars Science Laboratory) that ManTech
23   has *"finally found someone that knows the difference between a hole in the*
24   *ground and that orifice two feet below his shoulder blades."*

25       19.    Initially, Plaintiff was supervised by ManTech's Mr. Ted
26   Woolhouse. But within weeks of being employed by ManTech, Plaintiff
27   demonstrated he far surpassed Mr. Woolhouse or any others in ManTech's
28   Mission Solutions & Services Group. Eventually, his supervision was

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

1  assumed by Mr. Richard Fettig (President of FREE, Inc.), a person with
2  exceptional technical prowess, and more directly to various JPL MAMs,
3  Deputy MAMs, CogEs, PEMs, Group Supervisors, etc. This is to say
4  that Plaintiff worked more or less autonomously, requiring little or no
5  supervision from ManTech's Erik Berg.

6      **20.**     Plaintiff received healthy pay increases throughout his many
7  years with ManTech. He was viewed as capable and effective in his work
8  and was routinely judged as outstanding and exceptionally strong in all
9  significant areas of his position. In recognition of his talent, different areas
10  were added to his responsibilities over time.

11     **21.**     In evaluating Plaintiff's contributions year after year, his
12  ManTech direct report, Mr. Erik Berg, noted the feedback from JPL staff
13  as exemplary, both technically and socially. He was repeatedly commended
14  by the JPL staff for the improvements he recommended to mission critical
15  assemblies. While at ManTech, Plaintiff was judged as outstanding and
16  exceptionally strong in all significant areas. He was told each year by Erik
17  Berg that he received the maximum annual wage increase that ManTech
18  allowed.

19     **22.**     Federal funding for NASA became extremely limited as a
20  result of the 2008 recession. At the time, NASA headquarters placed
21  emphasis on manned missions and less so on interplanetary exploration.
22  So, for a period, JPL cutback. ManTech in turn laid-off staff who supported
23  JPL. Plaintiff was one of the last to go when he was laid off on October
24  15, 2012. When funding returned, Plaintiff was rehired by ManTech on
25  July 21, 2014 to once again serve as a key technical member of ManTech's
26  Mission Solutions & Services Group and provide engineering support in
27  fulfillment of the NASA Jet Propulsion Laboratory and California Institute
28  of Technology RESS contract. In the rehire, titled "Systems Engineer,

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

1   Senior" Plaintiff received a substantial pay increase in recognition of his
2   contributions to the successful renewal of ManTech's Mission Solutions &
3   Services Group contract. He was told that he again received ManTech's
4   highest ranking and that ManTech was very pleased with his performance
5   and results. Plaintiff's benefits included insurance coverage (life, accidental
6   death\disability insurance, travel, disability, health, dental), retirement
7   benefits, vacation and holiday pay, and so forth.

8       **23.**   But things changed for Plaintiff after he found it necessary
9   to raise concerns about ManTech's failure to comply in material respects
10  with federal contract rules relating to its performance under sensitive
11  United States government procurement contracts.

12      **24.**   Plaintiff followed ManTech policies and believed in the con-
13  tractual promise ManTech made to its employees: that they would not
14  suffer retaliation for raising concerns about unlawful conduct.

15      **25.**   On July 28, 2014, Plaintiff attended a "kick-off" meeting for
16  a JPL Mars InSight Mission related task, (InSight: Interior Exploration
17  using Seismic Investigations, Geodesy and Heat Transport). Attendees to
18  this meeting included: Linda Facto, JPL Mars InSight Mission Assurance
19  Manager; Hui-Yin Shaw, JPL Mars InSight Deputy Mission Assurance
20  Manager; Chau Brown; JPL Mars InSight Reliability Lead; Richard Fettig,
21  President FREE, Inc.; and others. An impromptu meeting immediately
22  followed this formal kick-off meeting where Linda Facto clearly stated
23  that JPL's contract with the third-party government contractor specifi-
24  cally excluded contractors (i.e. ManTech) from any access to third-party
25  government contractor's classifed/proprietary documents.

26      **26.**   However, to assist in his assigned tasks, Plaintiff informed
27  JPL Reliability Lead Chau Brown that he needed third-party government
28  contractor's MathCad files relating to the High Efficiency Power Supply

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

1   ("HEPS"). By August 7, 2014, an individual at third-party government

2   contractor was contacted by JPL's Chau Brown with a request to provide

3   the MathCAD files, which was denied the same day. The following month,

4   on September 1, 2014, JPL's Ernest Fierheller found MathCAD files for

5   the HEPS and placed the files on a shared server.

6       **27.**   On September 5, 2014, JPL's Linda Facto came across these

7   same files and informed Chau Brown that she would contact third-party

8   government contractor for permission. JPL's Linda Facto provided Chau

9   Brown third-party government contractor's response: Contractors are

10   forbidden to view these third-party government contractor proprietary

11   documents per the contractual agreement between third-party government

12   contractor and JPL. However, this information was not passed on to

13   Plaintiff. Instead, Chau Brown told Plaintiff she wasn't getting the

14   answers that she needed from management and to "go ahead and use the

15   files." (At this time, Plaintiff was unaware of Linda Facto's aforementioned

16   direction to Chau Brown).

17       **28.**   As directed, Plaintiff utilized the MathCad files for the Mars

18   InSight Mission HEPS related task and prepared his report, forwarding

19   the draft to Chau Brown at JPL. However, on October 7, 2014, Plaintiff

20   discovered that he was never authorized to access the MathCad files when

21   Chau Brown demanded Plaintiff remove references to HEPS MathCad

22   files from Plaintiff's written report. On the same date, Plaintiff sent an

23   e-mail to Chau Brown asking the question: did he have permission to use

24   the HEPS MathCad files? Her reply: "*Don't know . . . I do not think*

25   *it will be an issue.*" Not satisfied with this response and deeply troubled,

26   Plaintiff notified JPL's Ethics Enforcement department of an apparent

27   cover-up attempt.

28       **29.**   Distraught, the following day, on October 8, 2014, Plaintiff

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

1  informed Mantech's Erik Berg in writing that "management needs to get
2  involved", and described the issue in detail. However, Plaintiff received
3  no response from Mr. Berg. In fact, Mr. Berg *never* acknowledged receipt
4  or expressed any empathy for Plaintiff's distress.

5      **30.**   Plaintiff has a government security clearance as a necessary
6  part of his job. In the fall of 2014, Plaintiff understood that he is required
7  by federal law to report any matters affecting his security clearance to some-
8  one with authority to do something about it, DoD 5200.2-R, "Personnel
9  Security Program."

10     **31.**   About this same time, Plaintiff informed JPL Ethics En-
11 forcement division, of his concerns. On information and belief, Plaintiff
12 alleges that Erik Berg somehow discovered that JPL Ethics Enforcement
13 division was contacted by Plaintiff.

14     **32.**   On information and belief, Plaintiff alleges Chau Brown
15 covered up the fact that a contractor (ManTech) was given third-party
16 government contractor proprietary documents by JPL, with full knowledge
17 this act was in violation of the contractual agreement.

18     **33.**   Plaintiff feared that ManTech, in pursuit of profits, was not
19 attending to the requirements it pledged to uphold when entering into
20 government contracts to provide equipment and/or services for sensitive
21 United States Defense and State Department projects. He also feared that
22 ManTech was presenting claims for payment to the government and certify-
23 ing its compliance with all relevant rules and regulations notwithstanding
24 its willful non-compliance.

25     **34.**   Less than ten days later, on October 17, 2014, ManTech's
26 Erik Berg sent Plaintiff home without pay, advising Plaintiff to use a
27 floating holiday for that day's pay, and functionally placed Plaintiff on
28 part-time status in retaliation for informing Mantech's customer of the

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

1   above cover-up. As a ManTech rehire, Plaintiff was not eligible for floating

2   holiday pay, so Mr. Berg demanded Plaintiff use a paid vacation day

3   instead. Plaintiff refused to accommodate Mr. Berg's demand.

4       **35.**    In violation of state and federal law, on November 14, 2014,

5   Mantech notified Plaintiff (a full-time exempt employee) that he was

6   *retroactively* placed on furlough effective October 17, 2014 through Novem-

7   ber 7, 2014. The stated reason for the furlough in ManTech's letter was

8   "due to a funding reduction on the contract [Plaintiff] support[s]." Remark-

9   ably, ManTech's November 14, 2014 furlough notice also stated:"During

10  the furlough period, you have the option to use accrued Vacation/PTO for

11  your furlough days; however if you do not have sufficient Vacation/PTO,

12  your furlough days will be without pay."

13      **36.**    On December 17, 2014, Plaintiff contacted ManTech's HR

14  representative via e-mail: "[ManTech's Erik Berg] has expressed to me

15  more than once this week alone that he is considering laying me off. Only

16  me; nobody else. Is this retaliation?"

17      **37.**    Thereafter, Mantech placed Plaintiff on indefinite furlough

18  beginning December 22, 2014, only three days prior to the Christmas

19  holiday. To cover up the retaliation, ManTech also placed James Hale on

20  furlough, but on information and belief, Mr. Hale was shortly reinstated.

21      **38.**    On December 23, 2014, Plaintiff contacted Congresswoman

22  Judy Chu's local office. Ms. Chu's office then encouraged the human

23  resources department of JPL to conduct an internal investigation on this

24  allegation of cover-up. After a five (5) week internal investigation, Plaintiff

25  learned that JPL found that violations of contractual NDAs did occur,

26  but that Plaintiff's conduct was blameless.

27      **39.**    After refusing to acknowledge Plaintiff's demands for com-

28  pensation as a furloughed employee, on January 5, 2015, Plaintiff submitted

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

1  an unpaid Wages Complaint with the Labor Commissioner ("DLSE")

2      **40.**    On information and belief, the furloughs were entirely pre-
3  textual and designed to punish Plaintiff for his protected conduct and to
4  reset his otherwise fine course at ManTech, setting up him for functional
5  termination on a pretext at the first available opportunity.

6      **41.**    The furlough, of course, was necessary to justify the elimi-
7  nation in Plaintiff's role, particularly since the individual charged with
8  supervising and evaluating him evaluated him positively, finding him ca-
9  pable and effective, when the organization needed his skills to secure the
10  JPL work under the RESS contract.

11      **42.**    On January 23, 2015, Mantech sent Plaintiff a letter inform-
12  ing him that his employment would be terminated on February 6, 2015.
13  ManTech's termination letter and e-mail of January 23, 2015 sounded
14  optimistic about the possibility of Plaintiff returning to work, and even
15  discussed the possibility of employing him in another part time position,
16  stating in part "[t]his action in no way reflects upon your value in this
17  organization and you will remain eligible for rehire," and "[y]ou leave Man-
18  Tech in good standing." However, on information and belief, ManTech
19  already knew that all doors would be closed to Plaintiff.

20      **43.**    There certainly were jobs that were well within Plaintiffs
21  skill set and he earnestly hoped against hope that he would be hired
22  for one of those open positions, particularly given not only his formal
23  qualifications but his track-record of stellar service at ManTech.

24      **44.**    But ManTech had different ideas. Despite statements to the
25  contrary, ManTech never intended to give Plaintiff any chance at getting
26  other work. On February 6, 2015, Plaintiff's employment ended with
27  ManTech.

28      **45.**    Throughout 2015 and 2016, Plaintiff applied for positions

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

1  for which he was eminently qualified. He did not even get called in for
2  interviews.

3      **46.**     ManTech was committed to punishing him for questioning
4  their compliance and for causing a JPL Ethics investigation. And it has
5  continued in its retaliation against him, long after his employment ceased
6  in December of 2014. ManTech's ongoing efforts have caused and continue
7  to cause Plaintiff significant economic as well as emotional and reputational
8  damage.

9      **47.**     As a result of ManTech's continuing wrongful conduct, Plain-
10  tiff has suffered and will continue to suffer significant economic losses,
11  emotional distress, consequential damages and an enduring harm to his
12  career.

13

14  <div align="center">**COUNT ONE**</div>

15  <div align="center">**(Retaliation 31 U.S.C. § 2730(h); 18 U.S.C. § 1031(a))**</div>

16  As a first, separate and alternative claim for relief, Plaintiff alleges:

17      **48.**     Paragraphs 1 through 47 of this complaint are incorporated
18  herein by reference.

19      **49.**     As set forth above, Plaintiff engaged in activity protected by
20  federal statute. 31 U.S.C. §3730(h); 18 U.S.C. §1031(a). On information
21  and belief, Defendant learned that Plaintiff reported his concerns to
22  the Ethics Enforcement Division of JPL to conduct Plaintiff reasonably
23  believed to be fraudulent, in violation of restrictions of sensitive information
24  of third-party government contractor and which conduct by Defendant
25  was done in violation of the False Claims Act.

26      **50.**     ManTech was aware of his protected conduct and, through
27  the acts and omissions described above, *inter alia*, has unlawfully retal-
28  iated against Plaintiff because of his protected activity in violation of

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

1  31 U.S.C. § 2730(h); and 18 U.S.C. § 1031(a).

2  **51.**  As a direct result of the retaliatory conduct alleged above,

3  Plaintiff has suffered and continues to suffer substantial damages, including,

4  among other things, substantial losses in earnings.  As a further proxi-

5  mate result of Defendant's retaliatory actions against Plaintiff, as alleged

6  above, he has been harmed in that he has suffered, humiliation, mental

7  anguish and emotional distress, including but not limited to, humiliation,

8  depression, anxiety, and insomnia.

9  **52.**  Plaintiff has incurred and will incur attorney fees and costs

10  in the bringing of this action, and is entitled to recover such fees and

11  costs pursuant to 31 U.S.C. § 3730(h)(2).  Plaintiff is entitled to all relief

12  necessary to make him whole and pursuant to statute.

13

14  <center>**COUNT TWO**</center>

15  <center>**(Retaliation 10 U.S.C. § 2409)**</center>

16  As a second, separate and alternative claim for relief, Plaintiff alleges:

17  **53.**  Paragraphs 1 through 52 of this complaint are incorporated

18  herein by reference.

19  **54.**  The 2013 National Defense Authorization Act ("NDAA"),

20  signed by President Obama on January 2, 2013, significantly expanded

21  whistleblower protections and extended the protections that applied previ-

22  ously only to government employees. The 2013 NDAA extends whistle-

23  blower protections to contractors, subcontractors, and financial assistance

24  recipients and sub-recipients, and implements a new process for the sub-

25  mission and review of complaints. Federal agencies are required to inform

26  their award recipients and contractors of their new rights under the "Pilot

27  Program for Enhancement of Contractor Employee Whistleblower Protec-

28  tions" (Pilot Program), applicable between July 1, 2013 and January 1,

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

1   2017. The four-year Pilot Program enhances whistleblower protections

2   for contractor employees and creates additional obligations for Federal

3   agencies. Section 828 of the 2013 NDAA adds a new section 4712 to Title

4   41 of the U.S. Code, which contains the elements of the Pilot Program and

5   suspends the pre-existing whistleblower protections at 41 U.S.C. § 4705 for

6   the duration of the Pilot Program. An interim rule released September 30,

7   2013, by the Department of Defense, General Services Administration, and

8   National Aeronautics and Space Administration created a new Federal

9   Acquisition Regulation (FAR) section at 48 CFR § 3.908 to implement 42

10   U.S.C. § 4712 (see Federal Register Vol. 78, No. 189, issued September 30,

11   2013). FAR sections 3.901 through 3.906 remain intact but are similarly

12   suspended during the Pilot Program.

13      **55.**    The scope of coverage is broad and includes all individuals

14   performing work on a government contract or grant, including personal

15   services contractors and employees of a contractor, subcontractor, grantee

16   or subgrantee. Plaintiff was an employee of ManTech and qualifies as

17   an employee covered by the statute under 10 U.S.C. §§ 2409(a)(1) and

18   2409(3)(a).

19      **56.**    Similar to the text of Section 806 of the Sarbanes-Oxley Act,

20   the NDAA whistleblower-protection provisions bar a broad range of retal-

21   iatory acts, including discharging, demoting or "otherwise discriminat[ing]

22   against a whistleblower."

23      **57.**    As required by the NDAA, Plaintiff filed reprisal claim with

24   the NASA Office of Inspector General. 10 U.S.C. § 2409(c)(2). On January

25   17, 2017, The NASA Office of Inspector General notified Plaintiff that

26   it would take no action to investigate Plaintiff's claims. Plaintiff has

27   exhausted his administrative remedies under the NDAA, and is therefore

28   entitled to "bring a de novo action at law or equity against the contractor

1  or grantee to seek compensatory damages and other relief available under
2  this section." 10 U.S.C. § 2409(c)(2).

3

4                              COUNT THREE
5  (Retaliation in Violation of California Labor Code § 1102.5)
6  As a third, separate and alternative claim for relief, Plaintiff alleges:

7        **58.**    Paragraphs 1 through 57 of this complaint are incorporated
8  herein by reference.

9        **59.**    At all times during Plaintiff's employment with Defendant,
10  California Labor Code § 1102.5 was in full force and effect and binding on
11  Defendant. Labor Code § 1102.5 prohibits an employer from retaliating
12  against an employee for, among other things, disclosing information to
13  a government or law enforcement agency, a person with authority over
14  the employee or another employee who has the authority to investigate,
15  discover, or correct the violation or noncompliance if the employee has
16  reasonable cause to believe that the information discloses a violation of a
17  state or federal statute regardless of whether disclosing the information is
18  part of the employee's job duties.

19        **60.**    On information and belief, Plaintiff alleges that Defendant
20  terminated Plaintiff's employment in violation of California Labor Code
21  § 1102.5 because he disclosed information to both the JPL's Ethics En-
22  forcement and his supervisor Mr. Erik Berg that he had reasonable cause
23  to believe constituted a violation of federal law and/or because the em-
24  ployer feared he would report other such violations to a government or
25  law enforcement agency, and/or because Plaintiff refused to participate in
26  activity that would result in violations of federal law, specifically the ac-
27  cessing of classified/proprietary documents without permission. ManTech,
28  and DOES 1 through 20, and each of them, violated Labor Code Section

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

1   1102.5 by terminating Plaintiff's employment for complaining about the

2   above violations and refusing to engage in unlawful behavior.

3       **61.**   As a direct result of the retaliatory conduct alleged above,

4   Plaintiff has suffered and continues to suffer substantial damages, includ-

5   ing, among other things, substantial losses in earnings, lost wages and

6   benefits, future lost wages and benefits, and lost business and professional

7   opportunities. As a further proximate result of Defendant's retaliatory

8   actions against Plaintiff, as alleged above, he has been harmed in that he

9   has suffered, humiliation, mental anguish and emotional distress, including

10   but not limited to, humiliation, depression, anxiety, and insomnia.

11       **62.**   As a further proximate result of the aforementioned wrongful

12   conduct, Plaintiff has had to employ the services of attorneys to pursue

13   his legal rights, further damaging Plaintiff in an amount unknown at this

14   time, but according to proof at trial.

15       **63.**   ManTech and DOES 1 through 20, and each of them, com-

16   mitted the acts alleged herein maliciously, fraudulently, and oppressively,

17   in bad faith, with the wrongful intention of injuring Plaintiff, from an im-

18   proper and evil motive amounting to malice, and/or in conscious disregard

19   of Plaintiffs rights.

20

21                       **COUNT FOUR**

22                   **(Breach of Contract)**

23   As a fourth, separate and alternative claim for relief, Plaintiff alleges:

24       **64.**   Paragraphs 1 through 63 of this complaint are incorporated

25   herein by reference.

26       **65.**   At all times relevant, ManTech and Plaintiff's employment

27   relationship was governed, in relevant part, by ManTech's contractual

28   agreements with its employees, including but not limited to the Standards

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

1   of Ethics and Business Conduct, which, in relevant part, required employees
2   to alert ManTech to ethical problems or compliance issues, agreeing, in
3   exchange, that they will not suffer retaliation for raising such concerns. For
4   example, the ManTech's Code of Business Conduct and Ethics requires that
5   all employees communicate with ManTech regarding suspected violations
6   of policy: "All ManTech employees are required not only to abide by
7   our Standards of Ethics but also to report potential violations of these
8   Standards" See, e.g., ManTech Standard of Ethics and Business Conduct
9   (2012) ("Retaliation (HR 304, HR 306 & CG 403)"). In return, ManTech
10  promises that employees will not face retaliation for reporting. "As part
11  of our Standards and in accordance with our policies, ManTech pledges
12  to protect any employee making a good faith report from any type of
13  retaliatory action." *Id.*

14  **66.**   One section of ManTech's Standards of Ethics and Business
15  Conduct is SC 204, "Protection of Classified and Non-Classified Govern-
16  ment Information" which states "ManTech and its employees are required
17  by law to protect U.S. Government classified information, as well as many
18  forms of technical and sensitive Government data. ***Uncompromising***
19  ***security is critical to the success of our customers and our na-***
20  ***tion.*** You should contact your facility security officer or the Corporate
21  Security Department with any questions or to report a potential or actual
22  violation of the security regulations and/or laws relating to the handling of
23  classified or non-classified Government information." ManTech Standard
24  of Ethics and Business Conduct (2012) (emphasis added).

25  **67.**   Plaintiff's conduct in reporting his concerns both internally
26  at ManTech and to JPL Ethics Enforcement is an action consistent with
27  ManTech's stated values and policies.

28

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

## COUNT FIVE

**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

As a fifth, separate and alternative claim for relief, Plaintiff alleges:

**68.** Paragraphs 1 through 67 of this complaint are incorporated herein by reference.

**69.** Implied in every California contract is a covenant of good faith and fair dealing. This implied covenant prevents one party to a contract from acting in bad faith in the performance of its contractual obligations and prevents it from intentionally depriving the other party of the benefit he or she bargained for in the agreement.

**70.** ManTech's contractual agreements with its employees, including but not limited to the Code of Business Conduct and Ethics, required ManTech to act in accordance with the implied covenant of good faith and fair dealing with respect to requiring all employees to communicate with ManTech regarding suspected violations of policy and, if such communications occur, then to refrain from retaliation for such communications.

**71.** At all times alleged herein, Plaintiff performed all obligations under the contractual agreements between ManTech and its employees, including but not limited to the Code of Business Conduct and Ethics, except to the extent performance has been waived or excused or was otherwise prohibited by public policy.

**72.** Plaintiff is informed and believes and on that basis alleges that by engaging in the wrongful conduct alleged above, including retaliation for Plaintiff's communications regarding violations of law, ManTech breached the contract-based (not tort-based) covenant of good faith and fair dealing implied in the agreement.

**73.** As a direct and proximate result of ManTech's breach of

1    the implied covenant of good faith and fair dealing, Plaintiff has suffered
2    and continues to suffer damages including, but not limited to, loss of
3    compensation and professional opportunities, other financial losses and
4    loss of personal and professional reputation in an amount to be determined
5    at trial, but no less than $500,000.

6
7                         **PRAYER FOR RELIEF**

8        **1.**    On all Counts, for compensatory damages, including loss
9    of earnings and other economic damages, as well as damages for mental
10   anguish and emotional distress according to proof;

11       **2.**    On the First Count, reinstatement with the same seniority
12   status, two times the amount of backpay, and interest on the backpay. 31
13   U.S.C. § 3730 (h)(1) and (h)(2);

14       **3.**    On the Second Count, reinstatement with the same seniority
15   status, back pay, employment benefits, and any and all other terms and
16   conditions of employment that would apply to the person in that position
17   if the reprisal had not been taken. 10 U.S.C. § 2409(c)(1)(B).

18       **4.**    On the Third Count, for civil penalties, punitive and exem-
19   plary damages;

20       **5.**    On all Counts, for attorney fees, prejudgment interest and
21   costs as allowed by law; and

22       **6.**    For such other and further relief as the Court deems just
23   and proper.

24
25
26
27
28

Dated: March 29, 2017

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON

Esperanza Cervantes Anderson
Attorney for Plaintiff
DAVID LILLIE

## JURY DEMAND

Plaintiff requests trial by jury.

Dated: March 29, 2017         LAW OFFICE OF ESPERANZA CERVANTES
                              ANDERSON

                              Esperanza Cervantes Anderson
                              Attorney for Plaintiff
                              DAVID LILLIE

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA