Esperanza Cervantes Anderson (SBN: 197953)
LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
1037 North Allen Avenue
Pasadena, California 91104
Telephone: (626) 486-2477
Facsimile: (626) 389-8911

Attorneys for Plaintiff,
DAVID LILLIE

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DAVID LILLIE,** | CASE NO. 2:17-CV-2538 |
| *Plaintiff.* | **FIRST AMENDED COMPLAINT FOR DAMAGES / DEMAND FOR JURY** |
| vs. | |
| **MANTECH INT'L. CORP., a Delaware Corporation, and DOES 1-20,** | |
| *Defendants.* | |

## PRELIMINARY STATEMENT

Defendant ManTech International Corp. ("ManTech" or "Defendant") fired Plaintiff David Lillie ("Plaintiff") because he reported to ManTech his knowledge of unauthorized access to classified/proprietary information owned by a United States defense contractor. Plaintiff also reported to the Ethics Enforcement Division of Caltech's Jet Propulsion Lab ("JPL"), a federally funded research and development center with whom ManTech contracted to provide services. Plaintiff reported these concerns solely in attempt to remedy them. Plaintiff brings this action against ManTech for retaliation and wrongful termination in violation of the False Claims Act, 31 U.S.C. § 3730(h), California Labor Code § 1102.5, for breach of express and implied in fact contract, and breach of the implied covenant of good faith and fair dealing. Although ManTech asserted that its decision to lay off Plaintiff was based on economic reasons, ManTech had retaliatory motives and the proffered purpose was false and pretextual. In fact, ManTech was motivated to terminate Plaintiff in retaliation for expressing his good faith concerns about unlawful conduct to management. In so doing, ManTech also breached its enforceable promise with Plaintiff to *not* retaliate for his good faith reporting.

## NATURE OF ACTION

1. Plaintiff brings this action for unlawful retaliation and other unlawful conduct against his former employer, ManTech International Corp. (hereinafter, with its divisions, "ManTech" or the "Defendant").

2. Plaintiff worked for ManTech as a senior engineer from 2007 to the time of his termination on February 6, 2015. His contributions to ManTech were described over time as outstanding and critical to ManTech's business successes in supplying highly-skilled engineers to JPL.

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

Consistently, Plaintiff was acknowledged by his peers at ManTech and JPL as a smart and dedicated engineer. He was consistently judged at the highest rankings in his periodic evaluations and materially rewarded for his work.

## PARTIES

3.     Plaintiff is an individual who resides in Los Angeles County, California.

4.     Defendant ManTech is a Delaware corporation, authorized to do business in California, with a principal place of business at 12015 Lee Jackson Hwy, Fairfax, Virginia, 22033. ManTech also has a place of business at 2550 Honolulu Avenue, Suite 201 Montrose, California 91020. Per the most recent public filing submitted to the the Securities and Exchange Commission, ManTech now employs approximately 7,000 persons and "provides technologies and solutions for mission-critical national security programs for the Intelligence Community; the Departments of Defense, State, Homeland Security, Health and Human Services, Veterans Affairs and Justice, including the Federal Bureau of Investigation; the space community; and other U.S. government customers." (Form 8-K, filed on Nov 7, 2016: "About ManTech International Corporation." Retrieved from http://investor.mantech.com)

5.     The true names and capacities of Doe Defendants 1 through 20, inclusive, are unknown to Plaintiff, who therefore sues them by their fictitious names. Plaintiff is informed and believes, and on that basis alleges, that Doe Defendants 1 through 20 are legally responsible in some manner for the events and happenings alleged in this complaint, and legally caused injury and damage to Plaintiff as alleged herein. Plaintiff will amend the complaint to include the names and capacities of the Doe

Law Office of Esperanza Cervantes Anderson
Pasadena, California

1  Defendants as their identities and roles become known.

2  **6.**  Plaintiff is ignorant of the true names and capacities, whether

3  individual, corporate, or associate, of those defendants fictitiously sued as

4  Does 1 through 20 inclusive and so Plaintiff sues them by these fictitious

5  names. Plaintiff is informed and believes that each of the DOE defendants

6  is in some manner responsible for the conduct alleged herein. Upon discov-

7  ering the true names and capacities of these fictitiously named Defendants,

8  Plaintiff will amend this complaint to show the true names and capacities

9  of these fictitiously named defendants.

10

11  ## JURISDICTION

12  **7.**  Count I is a civil action by Plaintiff under the "whistle-

13  blower protection" provision of the Federal False Claims Act, 31 U.S.C.

14  § 3230(h). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 31

15  U.S.C 3730(h) and 3732(a).

16  **8.**  Count II is a civil action by Plaintiff under the "whistle-

17  blower protection" provision of the National Defense Authorization Act,

18  10 U.S.C. § 2409.  The Court has jurisdiction pursuant to 10 U.S.C.

19  § 2409(c)(2).

20  **9.**  Count III is a civil action by Plaintiff under the "whistle-

21  blower protection" provision under California Labor Code § 1102.5. This

22  Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 and

23  31 U.S.C. § 3732.

24  **10.**  Counts IV and V are civil actions for breach of contract and

25  breach of implied-in-fact contract respectively for violating ManTech's

26  "pledge" to protect any employee making a good faith report from "any"

27  type of retaliatory action.  This Court has supplemental jurisdiction

28

Law Office of Esperanza Cervantes Anderson
Pasadena, California

Law Office of Esperanza Cervantes Anderson
Pasadena, California

pursuant to 28 U.S.C. § 1367.

11.     Count VI is a civil action for breach of the implied covenant of good faith and fair dealing when violating ManTech's "pledge" to protect any employee making a good faith report from "any" type of retaliatory action. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

12.     All administrative prerequisites have been met for maintaining this action and federal question jurisdiction properly lies with this Court. Additionally, this court has diversity jurisdiction pursuant to 28 U.S.C. §1332, as the parties to this action are citizens of different states, and the amount in controversy, exclusive of any interests and costs, exceeds $75,000.

## VENUE

13.     Venue is proper pursuant to 31 U.S.C. § 3732(a) because defendants can be found in, and transact business in the Central District of California and the violations of 31 U.S.C. § 3729 described herein occurred within this judicial district.

## FACTS

14.     In February of 2007, Plaintiff was offered the position of Reliability Engineer Analyst with ManTech, based in Montrose, California. Hired to serve as a key technical member of ManTech's Mission Solutions & Services Group, Plaintiff's job at ManTech was to provide engineering support in fulfillment of the NASA Jet Propulsion Laboratory and California Institute of Technology Reliability Engineering Support Services ("RESS") contract.

15.     As a key technical member of ManTech's Mission Solutions

& Services Group, Plaintiff directly supported JPL's 5131 Product & Circuit Reliability Engineering Group on the Mars Science Laboratory project ("MSL"), Soil Moisture Active Passive ("SMAP") project, Juno project (a Jupiter orbiter mission) and various others.

16.    While at ManTech, Plaintiff performed reliability assessments, circuit modeling, electronic parts stress analysis, worst-case circuit analysis, and single events/effects analysis.  He provided MSL, SMAP and Juno MAMs ("Mission Assurance Managers"), CogEs ("Cognizant Engineers") and PEMs ("Project Element Managers") analysis, authoring thorough reports and detailed recommendations. While at ManTech, Plaintiff further performed and reviewed reliability analyses; assessed performance with respect to requirements; evaluated failure reports and analyses, and corrective action implementations; established reliability models for use in models for systems and subsystems analysis; and used computer aided engineering tools such as PSpice, MathCAD, MatLab, and others.

17.    While at ManTech, Plaintiff supported various design teams and recommended design changes, providing significant positive impact for the MSL, SMAP and Juno projects.  He repeatedly demonstrated his ability to leverage his many years of design experience to the MSL, SMAP and Juno projects by recommending necessary and critical design changes that materially mitigated reliability issues identified through his circuit modeling and reliability analyses.

18.    Within the first two weeks of his tenure at ManTech, Plaintiff was formally recognized for his success in the job for finding a major design flaw.  Had this issue not been identified, the MSL mission may have resulted in a crash landing on the surface of Mars.  Recognizing the value and contribution of Plaintiff's work, JPL's George Greanias said of Plaintiff

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

Law Office of Esperanza Cervantes Anderson
Pasadena, California

(with specific reference to the Mars Science Laboratory) that ManTech has *"finally found someone that knows the difference between a hole in the ground and that orifice two feet below his shoulder blades."*

19.    Initially, Plaintiff was supervised by ManTech's Mr. Ted Woolhouse. But within weeks of being employed by ManTech, Plaintiff demonstrated he far surpassed Mr. Woolhouse or any others in ManTech's Mission Solutions & Services Group. Eventually, his supervision was assumed by Mr. Richard Fettig (President of FREE, Inc.), a person with exceptional technical prowess, and more directly to various JPL MAMs, Deputy MAMs, CogEs, PEMs, Group Supervisors, etc. This is to say that Plaintiff worked more or less autonomously, requiring little or no supervision.

20.    Plaintiff received healthy pay increases throughout his many years with ManTech. He was viewed as capable and effective in his work and was routinely judged as outstanding and exceptionally strong in all significant areas of his position. In recognition of his talent, different areas were added to his responsibilities over time.

21.    In evaluating Plaintiff's contributions year after year, his ManTech direct report, Mr. Erik Berg, noted the feedback from JPL staff as exemplary, both technically and socially. He was repeatedly commended by the JPL staff for the improvements he recommended to mission critical assemblies. While at ManTech, Plaintiff was judged as outstanding and exceptionally strong in all significant areas. He was told each year by Erik Berg that he received the maximum annual wage increase that ManTech allowed.

22.    Federal funding for NASA became extremely limited as a result of the 2008 recession. At the time, NASA headquarters placed emphasis on manned missions and less so on interplanetary exploration.

So, for a period, JPL cutback.  ManTech in turn laid-off staff who supported JPL. Plaintiff was one of the last to go when he was laid off on October 15, 2012.  When funding returned, Plaintiff was rehired by ManTech on July 21, 2014 to once again serve as a key technical member of ManTech's Mission Solutions & Services Group and provide engineering support in fulfillment of the NASA Jet Propulsion Laboratory and California Institute of Technology RESS contract.  In the rehire, titled "Systems Engineer, Senior" Plaintiff received a substantial pay increase in recognition of his contributions to the successful renewal of ManTech's Mission Solutions & Services Group contract. He was told that he again received ManTech's highest ranking and that ManTech was very pleased with his performance and results.  Plaintiff's benefits included insurance coverage (life, accidental death\disability insurance, travel, disability, health, dental), retirement benefits, vacation and holiday pay, and so forth.

**23.**    But things changed for Plaintiff after he found it necessary to raise concerns about ManTech's failure to comply in material respects with federal contract rules relating to its performance under sensitive United States government procurement contracts.

**24.**    Plaintiff followed ManTech policies and believed in the contractual promise ManTech made to its employees: that they would not suffer retaliation for raising concerns about unlawful conduct.

**25.**    On July 28, 2014, Plaintiff attended a "kick-off" meeting for a JPL Mars InSight Mission related task, (InSight: Interior Exploration using Seismic Investigations, Geodesy and Heat Transport).  Attendees to this meeting included: Linda Facto, JPL Mars InSight Mission Assurance Manager; Hui-Yin Shaw, JPL Mars InSight Deputy Mission Assurance Manager; Chau Brown; JPL Mars InSight Reliability Lead; Richard Fettig, President FREE, Inc.; and others.  An impromptu meeting immediately

Law Office of Esperanza Cervantes Anderson
Pasadena, California

followed this formal kick-off meeting where Linda Facto clearly stated that JPL's contract with the third-party government contractor specifically excluded contractors (i.e. ManTech) from any access to third-party government contractor's classifed/proprietary documents.

26.   However, to assist in his assigned tasks, Plaintiff informed JPL Reliability Lead Chau Brown that he needed third-party government contractor's MathCad files relating to the High Efficiency Power Supply ("HEPS"). By August 7, 2014, an individual at third-party government contractor was contacted by JPL's Chau Brown with a request to provide the MathCAD files, which was denied the same day. Nevertheless, the following month, on September 1, 2014, JPL's Ernest Fierheller found MathCAD files for the HEPS and placed the files on a shared server. Plaintiff was told he could use the files notwithstanding the express denial recieved the month before.

27.   On September 5, 2014, JPL's Linda Facto came across these same files and informed Chau Brown that she would contact third-party government contractor for permission. JPL's Linda Facto provided Chau Brown third-party government contractor's response: Contractors are forbidden to view these third-party government contractor proprietary documents per the contractual agreement between third-party government contractor and JPL. However, this information was not passed on to Plaintiff. Instead, Chau Brown told Plaintiff she wasn't getting the answers that she needed from management and to "go ahead and use the files." (At this time, Plaintiff was unaware of Linda Facto's aforementioned direction to Chau Brown).

28.   As directed, Plaintiff utilized the MathCad files for the Mars InSight Mission HEPS related task and prepared his report, forwarding the draft to Chau Brown at JPL. However, on October 7, 2014, Plaintiff

discovered that he was never authorized to access the MathCad files when Chau Brown demanded Plaintiff remove references to HEPS MathCad files from Plaintiff's written report. On the same date, Plaintiff sent an e-mail to Chau Brown asking the question: did he have permission to use the HEPS MathCad files? Her reply: "*Don't know . . . I do not think it will be an issue.*" Not satisfied with this response and deeply troubled, Plaintiff notified JPL's Ethics Enforcement department of an apparent cover-up attempt.

29.  Distraught, the following day, on October 8, 2014, Plaintiff informed Mantech's Erik Berg in writing that "management needs to get involved," and described the issue in detail. However, Plaintiff received no response from Mr. Berg. In fact, Mr. Berg *never* acknowledged receipt or expressed any empathy for Plaintiff's distress.

30.  Plaintiff has a government security clearance as a necessary part of his job. In the fall of 2014, Plaintiff understood that he is required by federal law to report any matters affecting his security clearance to someone with authority to do something about it. DoD 5200.2-R, "Personnel Security Program."

31.  About this same time, Plaintiff informed JPL Ethics Enforcement division, of his concerns. On information and belief, Plaintiff alleges that Erik Berg somehow discovered that JPL Ethics Enforcement division was contacted by Plaintiff.

32.  On information and belief, Plaintiff alleges Chau Brown covered up the fact that a contractor (ManTech) was given third-party government contractor proprietary documents by JPL, with full knowledge this act was in violation of federal law as well as JPL's contractual agreement.

33.  Plaintiff feared that ManTech, in pursuit of profits, was not

attending to the requirements it pledged to uphold when entering into government contracts to provide equipment and/or services for sensitive United States Defense and State Department projects. He also feared that ManTech was presenting claims for payment to the government and certifying its compliance with all relevant rules and regulations notwithstanding its willful non-compliance.

34.     Less than ten days later, on October 17, 2014, ManTech's Erik Berg sent Plaintiff home without pay, advising Plaintiff to use a floating holiday for that day's pay in retaliation for informing Mantech's customer of the above cover-up. As a ManTech rehire, Plaintiff was not eligible for floating holiday pay, so Mr. Berg demanded Plaintiff use a paid vacation day instead. Plaintiff refused to accommodate Mr. Berg's demand.

35.     Plaintiff never returned to work after being sent home from work on November 14, 2014. Instead, on November 14, 2014, Mantech notified Plaintiff (a full-time exempt employee) that he was *retroactively* placed on furlough effective October 17, 2014 through November 7, 2014 in retaliation, thereby violating both state and federal law. The stated reason for the furlough in ManTech's letter was "due to a funding reduction on the contract [Plaintiff] support[s]." Remarkably, ManTech's November 14, 2014 furlough notice also stated: "During the furlough period, you have the option to use accrued Vacation/PTO for your furlough days; however if you do not have sufficient Vacation/PTO, your furlough days will be without pay."

36.     On December 17, 2014, Plaintiff contacted ManTech's HR representative via e-mail: "[ManTech's Erik Berg] has expressed to me more than once this week alone that he is considering laying me off. Only

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

1    me; nobody else. Is this retaliation?"

2    **37.**    Thereafter, Mantech placed Plaintiff on indefinite furlough

3    beginning December 22, 2014, only three days prior to the Christmas

4    holiday. To cover up the retaliation, ManTech also placed James Hale on

5    furlough, but on information and belief, Mr. Hale was shortly reinstated

6    shortly thereafter.

7    **38.**    On December 23, 2014, Plaintiff contacted Congresswoman

8    Judy Chu's local office. Her office encouraged the human resources depart-

9    ment of JPL to conduct an internal investigation. After a five (5) week

10    internal investigation, Plaintiff learned that JPL found that violations of

11    contractual NDAs did occur, but that Plaintiff's conduct was blameless.

12    **39.**    After refusing to acknowledge Plaintiff's demands for com-

13    pensation as a furloughed employee, on January 5, 2015, Plaintiff submitted

14    an unpaid Wages Complaint with the Labor Commissioner ("DLSE")

15    **40.**    On information and belief, the furloughs were entirely pre-

16    textual and designed to punish Plaintiff for his protected conduct and to

17    reset his otherwise fine course at ManTech, setting up him for functional

18    termination on a pretext at the first available opportunity.

19    **41.**    The furlough, of course, was necessary to justify the elimi-

20    nation in Plaintiff's role, particularly since the individual charged with

21    supervising and evaluating him evaluated him positively, finding him ca-

22    pable and effective, when the organization needed his skills to secure the

23    JPL work under the RESS contract.

24    **42.**    On January 23, 2015, Mantech sent Plaintiff a letter inform-

25    ing him that his employment would be terminated on February 6, 2015.

26    ManTech's termination letter and e-mail of January 23, 2015 sounded

27    optimistic about the possibility of Plaintiff returning to work, and even

28    discussed the possibility of employing him in another part time position,

Law Office of Esperanza Cervantes Anderson
Pasadena, California

1   stating in part "[t]his action in no way reflects upon your value in this
2   organization and you will remain eligible for rehire," and "[y]ou leave Man-
3   Tech in good standing."  However, on information and belief, ManTech
4   already knew that all doors would be closed to Plaintiff.

5       **43.**   There certainly were jobs that were well within Plaintiff's
6   skill set and he earnestly hoped against hope that he would be hired
7   for one of those open positions, particularly given not only his formal
8   qualifications but his track-record of stellar service at ManTech.

9       **44.**   ManTech had different ideas.  Despite statements to the
10  contrary, ManTech never intended to give Plaintiff any chance at getting
11  other work.  On February 6, 2015, Plaintiff's employment ended with
12  ManTech.

13      **45.**   Throughout 2015 and 2016, Plaintiff applied for positions
14  for which he was eminently qualified.  He did not even get called in for
15  interviews.

16      **46.**   ManTech was committed to punishing him for reporting
17  ManTech's misuse of documents and information in violation of state and
18  federal law as described above, and for causing a JPL Ethics investigation.
19  And it has continued in its retaliation against him, long after his employ-
20  ment ceased in December of 2014. ManTech's ongoing efforts have caused
21  and continue to cause Plaintiff significant economic as well as emotional
22  and reputational damage.

23      **47.**   As a result of ManTech's continuing wrongful conduct, Plain-
24  tiff has suffered and will continue to suffer significant economic losses,
25  emotional distress, consequential damages and an enduring harm to his
26  career.

27
28

*Law Office of Esperanza Cervantes Anderson*
*Pasadena, California*

## COUNT ONE

Law Office of Esperanza Cervantes Anderson
Pasadena, California

(**Retaliation 31 U.S.C. § 2730(h); 18 U.S.C. § 1031(a)**)

As a first, separate and alternative claim for relief, Plaintiff alleges:

**48.**     Paragraphs 1 through 47 of this complaint are incorporated herein by reference.

**49.**     As set forth above, Plaintiff engaged in activity protected by federal statute. 31 U.S.C. §3730(h); 18 U.S.C. §1031(a). On information and belief, Defendant learned that Plaintiff reported his concerns to the Ethics Enforcement Division of JPL to conduct Plaintiff reasonably believed to be fraudulent, in violation of restrictions of sensitive information of third-party government contractor and which conduct by Defendant was done in violation of the False Claims Act.

**50.**     ManTech was aware of his protected conduct and, through the acts and omissions described above, *inter alia*, has unlawfully retaliated against Plaintiff because of his protected activity in violation of 31 U.S.C. § 2730(h); and 18 U.S.C. § 1031(a).

**51.**     As a direct result of the retaliatory conduct alleged above, Plaintiff has suffered and continues to suffer substantial damages, including, among other things, substantial losses in earnings.  As a further proximate result of Defendant's retaliatory actions against Plaintiff, as alleged above, he has been harmed in that he has suffered, humiliation, mental anguish and emotional distress, including but not limited to, humiliation, depression, anxiety, and insomnia.

**52.**     Plaintiff has incurred and will incur attorney fees and costs in the bringing of this action, and is entitled to recover such fees and costs pursuant to 31 U.S.C. § 3730(h)(2). Plaintiff is entitled to all relief necessary to make him whole and pursuant to statute.

**COUNT TWO**

**(Retaliation 10 U.S.C. § 2409)**

As a second, separate and alternative claim for relief, Plaintiff alleges:

**53.** Paragraphs 1 through 52 of this complaint are incorporated herein by reference.

**54.** The 2013 National Defense Authorization Act ("NDAA"), signed by President Obama on January 2, 2013, significantly expanded whistleblower protections and extended the protections that applied previously only to government employees. The 2013 NDAA extends whistleblower protections to contractors, subcontractors, and financial assistance recipients and sub-recipients, and implements a new process for the submission and review of complaints. Federal agencies are required to inform their award recipients and contractors of their new rights under the "Pilot Program for Enhancement of Contractor Employee Whistleblower Protections" (Pilot Program), applicable between July 1, 2013 and January 1, 2017. The four-year Pilot Program enhances whistleblower protections for contractor employees and creates additional obligations for Federal agencies. Section 828 of the 2013 NDAA adds a new section 4712 to Title 41 of the U.S. Code, which contains the elements of the Pilot Program and suspends the pre-existing whistleblower protections at 41 U.S.C. § 4705 for the duration of the Pilot Program. An interim rule released September 30, 2013, by the Department of Defense, General Services Administration, and National Aeronautics and Space Administration created a new Federal Acquisition Regulation (FAR) section at 48 CFR § 3.908 to implement 42 U.S.C. § 4712 (see Federal Register Vol. 78, No. 189, issued September 30, 2013). FAR sections 3.901 through 3.906 remain intact but are similarly suspended during the Pilot Program.

**55.** The scope of coverage is broad and includes all individuals

Law Office of Esperanza Cervantes Anderson
Pasadena, California

performing work on a government contract or grant, including personal services contractors and employees of a contractor, subcontractor, grantee or subgrantee.  Plaintiff was an employee of ManTech and qualifies as an employee covered by the statute under 10 U.S.C. §§ 2409(a)(1) and 2409(3)(a).

56.     Similar to the text of Section 806 of the Sarbanes-Oxley Act, the NDAA whistleblower-protection provisions bar a broad range of retaliatory acts, including discharging, demoting or "otherwise discriminat[ing] against a whistleblower."

57.     As required by the NDAA, Plaintiff filed reprisal claim with the NASA Office of Inspector General. 10 U.S.C. § 2409(c)(2). On January 17, 2017, The NASA Office of Inspector General notified Plaintiff that it would take no action to investigate Plaintiff's claims.  Plaintiff has exhausted his administrative remedies under the NDAA, and is therefore entitled to "bring a de novo action at law or equity against the contractor or grantee to seek compensatory damages and other relief available under this section." 10 U.S.C. § 2409(c)(2).

## COUNT THREE

### (Retaliation in Violation of California Labor Code § 1102.5)

As a third, separate and alternative claim for relief, Plaintiff alleges:

58.     Paragraphs 1 through 57 of this complaint are incorporated herein by reference.

59.     At all times during Plaintiff's employment with Defendant, California Labor Code § 1102.5 was in full force and effect and binding on Defendant.  Labor Code §1102.5 (b) prohibits an employer from retaliating against an employee for, disclosing information, or because the employer believes that the employee disclosed or may disclose information,

Law Office of Esperanza Cervantes Anderson
Pasadena, California

to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employees job duties. Labor Code § 1102.5(c) prohibits an employer from retaliating against an employee for, refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation. Plaintiff refused to participate in the cover-up of ManTechs unlawful use of classified information/documents. Plaintiff further complained to his direct supervisor, Erik Berg, and also complained to JPL's Ethics Enforcement of ManTech's unlawful use of classified information/documents. At all times, JPLs Ethics Enforcement had the authority to prevent ManTech from improperly accessing and using the classified information/documents that ManTech improperly provided to Plaintiff.

**60.**    On information and belief, Plaintiff alleges that Defendant terminated Plaintiff's employment in violation of California Labor Code § 1102.5 because he disclosed information to both the JPL's Ethics Enforcement and his supervisor Mr. Erik Berg that he had reasonable cause to believe constituted a violation of federal law and/or because the employer feared he would report other such violations to a government or law enforcement agency, and/or because Plaintiff refused to participate in activity that would result in violations of federal law, specifically the accessing of classified/proprietary documents without permission. ManTech,

Law Office of Esperanza Cervantes Anderson
Pasadena, California

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

and DOES 1 through 20, and each of them, violated Labor Code Section 1102.5 by terminating Plaintiff's employment for complaining about the above violations and refusing to engage in unlawful behavior.

61.     As a direct result of the retaliatory conduct alleged above, Plaintiff has suffered and continues to suffer substantial damages, including, among other things, substantial losses in earnings, lost wages and benefits, future lost wages and benefits, and lost business and professional opportunities. As a further proximate result of Defendant's retaliatory actions against Plaintiff, as alleged above, he has been harmed in that he has suffered, humiliation, mental anguish and emotional distress, including but not limited to, humiliation, depression, anxiety, and insomnia.

62.     As a further proximate result of the aforementioned wrongful conduct, Plaintiff has had to employ the services of attorneys to pursue his legal rights, further damaging Plaintiff in an amount unknown at this time, but according to proof at trial.

63.     ManTech and DOES 1 through 20, and each of them, committed the acts alleged herein maliciously, fraudulently, and oppressively, in bad faith, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and/or in conscious disregard of Plaintiffs rights.

## COUNT FOUR
### (Breach of Contract)

As a fourth, separate and alternative claim for relief, Plaintiff alleges:

64.     Paragraphs 1 through 63 of this complaint are incorporated herein by reference.

65.     At all times relevant, ManTech and Plaintiff's employment relationship was governed, in relevant part, by ManTech's contractual

Law Office of Esperanza Cervantes Anderson
Pasadena, California

agreements with its employees, including but not limited to the Standards of Ethics and Business Conduct, which, in relevant part, required employees to alert ManTech to ethical problems or compliance issues, agreeing, in exchange, that they will not suffer retaliation for raising such concerns. For example, the ManTech's Code of Business Conduct and Ethics requires that all employees communicate with ManTech regarding suspected violations of policy: "All ManTech employees are required not only to abide by our Standards of Ethics but also to report potential violations of these Standards" See, e.g., ManTech Standard of Ethics and Business Conduct (2012) ("Retaliation (HR 304, HR 306 & CG 403)"). In return, ManTech promises that employees will not face retaliation for reporting. "As part of our Standards and in accordance with our policies, ManTech pledges to protect any employee making a good faith report from any type of retaliatory action." *Id.*

66. One section of ManTech's Standards of Ethics and Business Conduct is SC 204, "Protection of Classified and Non-Classified Government Information" which states "ManTech and its employees are required by law to protect U.S. Government classified information, as well as many forms of technical and sensitive Government data. ***Uncompromising security is critical to the success of our customers and our nation.*** You should contact your facility security officer or the Corporate Security Department with any questions or to report a potential or actual violation of the security regulations and/or laws relating to the handling of classified or non-classified Government information." ManTech Standard of Ethics and Business Conduct (2012) (emphasis added).

67. Plaintiff's conduct in reporting his concerns both internally at ManTech and to JPL Ethics Enforcement is an action consistent with ManTech's stated values and policies.

# COUNT FIVE

## (Breach of Implied-In-Fact Contract)

As a fifth, separate and alternative claim for relief, Plaintiff alleges:

**68.** Paragraphs 1 through 67 of this complaint are incorporated herein by reference.

**69.** At all times relevant, ManTech and Plaintiff's employment relationship was governed, in relevant part, by ManTech's contractual agreements with its employees, including but not limited to the Standards of Ethics and Business Conduct, which, in relevant part, required employees to alert ManTech to ethical problems or compliance issues, agreeing, in exchange, that they will not suffer retaliation for raising such concerns. For example, the ManTechs Code of Business Conduct and Ethics requires that all employees communicate with ManTech regarding suspected violations of policy: "All ManTech employees are required not only to abide by our Standards of Ethics but also to report potential violations of these Standards" See, e.g., ManTech Standard of Ethics and Business Conduct (2012) (Retaliation (HR 304, HR 306  CG 403)). In return, ManTech promises that employees will not face retaliation for reporting. As part of our Standards and in accordance with our policies, ManTech pledges to protect any employee making a good faith report from any type of retaliatory action. Id. One section of ManTechs Standards of Ethics and Business Conduct is SC 204, Protection of Classified and Non-Classified Government Information which states ManTech and its employees are required by law to protect U.S. Government classified information, as well as many forms of technical and sensitive Government data. ***Uncompromising security is critical to the success of our customers and our nation.*** You should contact your facility security officer or the Corporate Security Department with any questions or to

Law Office of Esperanza Cervantes Anderson
Pasadena, California

report a potential or actual violation of the security regulations and/or laws relating to the handling of classified or non-classified Government information. ManTech Standard of Ethics and Business Conduct (2012) (emphasis added).

70.    Plaintiff is informed and believes and based thereon alleges that ManTech promulgated the policies set forth in its Standards of Ethics and Business Conduct as a systematic approach to personnel relations, to provide a clear and uniform alternative to haphazard practices, understandings and arrangements within the company.

71.    Plaintiff reasonably relied on the policies in the Standards of Ethics and Business Conduct, as the terms and conditions of his employment.

72.    Based on the foregoing, there existed an implied contract between Plaintiff and ManTech that ManTech would comply with the policies promulgated in the Standards of Ethics and Business Conduct and elsewhere.

73.    Plaintiff has performed all conditions, covenants and promised to be performed on Plaintiffs part under the implied contract of employment, except for those conditions, covenants and promises excused by reasons of the breach of the implied contract by ManTech.

74.    Defendants, and each of them, breached the implied contract of employment with Plaintiff by terminating Plaintiffs employment for reporting the unlawful use of classified information and documents both internally at ManTech and to JPL Ethics Enforcement is an action consistent with ManTechs stated values and policies.

75.    As a proximate result of Defendants breach of the implied contract of employment, Plaintiff has been damaged, in that Plaintiff has suffered and continues to sustain substantial losses in earnings and other

Law Office of Esperanza Cervantes Anderson
Pasadena, California

employment benefits in an amount according to proof at the time of trial.

## COUNT SIX

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

As a sixth, separate and alternative claim for relief, Plaintiff alleges:

**76.** Paragraphs 1 through 75 of this complaint are incorporated herein by reference.

**77.** Implied in every California contract is a covenant of good faith and fair dealing. This implied covenant prevents one party to a contract from acting in bad faith in the performance of its contractual obligations and prevents it from intentionally depriving the other party of the benefit he or she bargained for in the agreement.

**78.** ManTech's contractual agreements with its employees, including but not limited to the Code of Business Conduct and Ethics, required ManTech to act in accordance with the implied covenant of good faith and fair dealing with respect to requiring all employees to communicate with ManTech regarding suspected violations of policy and, if such communications occur, then to refrain from retaliation for such communications.

**79.** At all times alleged herein, Plaintiff performed all obligations under the contractual agreements between ManTech and its employees, including but not limited to the Code of Business Conduct and Ethics, except to the extent performance has been waived or excused or was otherwise prohibited by public policy.

**80.** Plaintiff is informed and believes and on that basis alleges that by engaging in the wrongful conduct alleged above, including retaliation for Plaintiff's communications regarding violations of law, ManTech breached the contract-based (not tort-based) covenant of good faith and

Law Office of Esperanza Cervantes Anderson
Pasadena, California

fair dealing implied in the agreement.

**81.** As a direct and proximate result of ManTech's breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered and continues to suffer damages including, but not limited to, loss of compensation and professional opportunities, other financial losses and loss of personal and professional reputation in an amount to be determined at trial, but no less than $500,000.

## PRAYER FOR RELIEF

**1.** On all Counts, for compensatory damages, including loss of earnings and other economic damages, as well as damages for mental anguish and emotional distress according to proof;

**2.** On the First Count, reinstatement with the same seniority status, two times the amount of backpay, and interest on the backpay. 31 U.S.C. § 3730 (h)(1) and (h)(2);

**3.** On the Second Count, reinstatement with the same seniority status, back pay, employment benefits, and any and all other terms and conditions of employment that would apply to the person in that position if the reprisal had not been taken. 10 U.S.C. § 2409(c)(1)(B).

**4.** On the Third Count, for civil penalties, punitive and exemplary damages;

**5.** On all Counts, for attorney fees, prejudgment interest and costs as allowed by law; and for such other and further relief as the Court deems just and proper.

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON
PASADENA, CALIFORNIA

Dated: June 17, 2017

LAW OFFICE OF ESPERANZA CERVANTES ANDERSON

Esperanza Cervantes Anderson
Attorney for Plaintiff
DAVID LILLIE

# JURY DEMAND

Plaintiff requests trial by jury.

Dated: June 17, 2017

LAW OFFICE OF ESPERANZA CERVANTES
ANDERSON

_____
Esperanza Cervantes Anderson
Attorney for Plaintiff
DAVID LILLIE