1  ERIC A. COOK (Bar No. 247331)
   ecook@littler.com
2  LITTLER MENDELSON, P.C.
   2049 Century Park East
3  5th Floor
   Los Angeles, CA 90067-3107
4  Telephone: 310.712.7339
   Facsimile: 310.861.8422
5
   ALISON N. DAVIS *(Pro Hac Vice)*
6  andavis@littler.com
   LITTLER MENDELSON, P.C.
7  815 Connecticut Avenue, NW
   Suite 400
8  Washington, DC 20006-4046
   Telephone: 202.842.3400
9  Facsimile: 202.842.0011

10 Attorneys for Defendant
   MANTECH INTERNATIONAL CORP.
11

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 14  DAVID LILLIE, | Case No. 2:17-CV-2538 CAS (SSx) |
| 15            Plaintiff, | ASSIGNED FOR ALL PURPOSES TO JUDGE CHRISTINA A. SNYDER |
| 16  v. | **DEFENDANT MANTECH INTERNATIONAL CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** |
| 17  MANTECH INT'L. CORP., et al., | |
| 18            Defendants. | |
| 19 | |
| 20 | |
| 21 | **[FED. R. CIV. P. 12(b)(6)]** |
| 22 | *[Filed Concurrently with Notice of Motion; Proposed Order]* |
| 23 | Hearing Date: August 14, 2017 |
| 24 | Time: 10:00 am<br>Courtroom: 8D |
| 25 | Amended Complaint Filed: June 16, 2017 |

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ................................................................................................. 1

II. FACTUAL BACKGROUND ............................................................................... 2

III. LEGAL STANDARD ........................................................................................... 3

IV. ARGUMENT ........................................................................................................ 4

    A. Count One of Plaintiff's Complaint for Retaliation Under the False Claims Act Should Be Dismissed Because it Fails to Comply With the Minimum Pleading Standards ................................................................... 4

    B. Count Two of Plaintiff's Complaint Fails to Plead Adequately That Plaintiff Engaged in Protected Activity Under the DCWPA .................... 6

    C. Count Three of Plaintiff's Complaint Fails Because the JPL Ethics Enforcement Department is not a Government Agency ........................... 8

    D. Count Four of Plaintiff's Complaint Fails Because ManTech's Standard of Ethics and Business Conduct (2012) is Not a Contract ........ 9

    E. Count Five of Plaintiff's Complaint Fails Because Plaintiff Has Not Alleged With Sufficient Particularity Conduct ................................ 11

    F. Count Six of Plaintiff's Complaint Fails Because Plaintiff did not Have a Contract With ManTech ............................................................. 12

V. CONCLUSION ................................................................................................... 13

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA 90067.3107
310.553.0308

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Aboulhosn v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   940 F.Supp.2d 1203 (C.D. Cal. 2013) .................................................................. 9, 12

*Am. Mortg. Network v. LoanCity.com*,
   D044550, 2006 WL 3199291 (Cal. App. Nov. 7, 2006) .......................................... 10

*Ashbey v. Archstone Property Management, Inc.*,
   No. SACV 12–0009 DOC (RNBx), 2012 WL 1269122 (C.D. Cal. Apr. 13, 2012) ............................................................................................................. 9

*Barron v. Reich*,
   13 F.3d 1370 (9th Cir. 1994) ...................................................................................... 3

*Bianco v. H.F. Ahmanson & Co.*,
   897 F.Supp. 433 (C.D. Cal.1995) ............................................................................ 10

*Branch v. Tunnell*,
   14 F.3d 449 (9th Cir. 1994) overruled on other grounds in *Porter v. Jones*, 319 F.3d 483, 494-95 (9th Cir. 2003) ........................................................ 3, 4

*In re Burlington Coat Factory Securities Litigation*,
   114 F.3d 1410 (3rd Cir.1997) ..................................................................................... 4

*Green v. Ralee Engineering Co.*
   (1998) 19 Cal.4th 66 ................................................................................................... 8

*Mokler v. County of Orange*
   (2007) 157 Cal.App.4th 121 ....................................................................................... 8

*Moore v. Cal. Inst. Of Tech. Jet Propulsion Lab.*,
   275 F.3d 838 (9th Cir. 2002) ...................................................................................... 5

*Neitzke v. Williams*,
   490 U.S. 319, 109 S. Ct. 1827 (1989) (abrogated on other grounds) ........................ 3

*North Star Int'l v. Arizona Corp. Comm'n*,
   720 F.2d 578 (9th Cir. 1983) ...................................................................................... 3

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA 90067.3107
310.553.0308

ii.

# TABLE OF AUTHORITIES
## (CONTINUED)

PAGE

*Parrino v. FHP, Inc.*,
    146 F.3d 699 (9th Cir. 1998) .................................................................................. 4

*Patten v. Grant Joint Union High School Dist.*,
    134 Cal.App.4th 1378 (2005) ................................................................................ 8

*Retired Employees Assn. of Orange County, Inc. v. County of Orange*
    52 Cal.4th 1171 (2011) .................................................................................. 11, 12

*Robertson v. Dean Witter Reynolds, Inc.*,
    749 F.2d 530 (9th Cir. 1984) .................................................................................. 3

*Silvas v. E*Trade Mortg. Corp.*,
    421 F. Supp. 2d 1315 (S.D. Cal. 2006) ................................................................... 3

*White v. Dep't of the Air Force*,
    63 M.S.P.R. 90 (1994) ............................................................................................ 7

*Xin Liu v. Amway Corp.*,
    347 F.3d 1125 (9th Cir.2003) ............................................................................... 10

*Yak v. Bank Brussels Lambert, BBL Holdings Inc.*,
    252 F.3d 127 (2nd Cir. 2001) ................................................................................. 4

**Statutes**

31 U.S.C.A. § 3730(h)(1) ............................................................................................. 5

California Labor Code § 1102 ..................................................................................... 1

California Labor Code § 1102.5 .................................................................................. 8

California Labor Code § 1102.5(b) ............................................................................. 8

Defense Contractor Whistleblower Protection Act, 10 U.S.C.A. § 2409 .......... 1, 6, 7, 8

False Claims Act, 31 U.S.C.A. § 3730 ............................................................... 1, 4, 5, 6

**Other Authorities**

Federal Rule of Civil Procedure 8(a)(2) ...................................................................... 3

# TABLE OF AUTHORITIES
## (CONTINUED)

**PAGE**

Federal Rule of Civil Procedure 12(b)(6) ........................................................... 1, 3, 4, 11

Federal Rule of Civil Procedure 56 ............................................................................ 11

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA  90067.3107
310.553.0308

iv.

# I.
# INTRODUCTION

Plaintiff David Lillie, a former employee of ManTech International Corporation ("ManTech"), alleges six claims relating to the termination of the employer-employee relationship. Counts One and Two allege that ManTech, a government contractor, violated the provisions prohibiting retaliation under the False Claims Act (FCA), 31 U.S.C.A. § 3730, and 2013 National Defense Authorization Act (Defense Contractor Whistleblower Protection Act (DCWPA), 10 U.S.C.A. § 2409) when it placed him on furlough status and then terminated his employment after he reported a purported cover-up of unauthorized access to confidential information of an unidentified third-party contractor in violation of a primary contractor's contract with a third party. Count Three further alleges that ManTech's employment decisions violated California Labor Code § 1102. Count Four and Five allege that ManTech breached an express and implied contractual obligation not to retaliate against employees who make a good faith report of a potential or actual ethical or compliance issue. Count Six alleges that ManTech breached an implied covenant of good faith and fair dealing by terminating his employment in retaliation for disclosing the purported cover-up.

Plaintiff has failed to allege enough facts that suggest ManTech violated the FCA, DCWPA, Labor Code § 1102 or any contractual obligation. Assuming all of Plaintiff's allegations are true, the Amended Complaint ("Complaint") does not plausibly suggest that he is entitled to any relief against ManTech. Accordingly, ManTech files this motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure requesting that the Court dismiss this Complaint in its entirety.

## II. FACTUAL BACKGROUND[1]

ManTech had a contract to provide services to the California Institute of Technology's Jet Propulsion Lab ("JPL"), a federally funded research and development center. Compl. at 2:5-8. Plaintiff was a systems engineer assigned to provide engineering support on a subcontract relating to the Reliability Engineering Support Services (RESS) prime contract between JPL and the National Aeronautics and Space Administration (NASA). Compl. ¶ 14. Specifically, Plaintiff performed reliability assessments, circuit modeling, electronic parts stress analysis, worst-case circuit analysis, and single events/effects analysis; and provided Mars Science Laboratory ("MSL"), Soil Moisture Active Passive ("SMAP") and Juno Mission Assurance Managers ("MAMs"), Cognizant Engineers ("CogEs") and Project Element Managers ("PEMs") analysis. Compl. ¶ 16. Plaintiff performed and reviewed reliability analyses; assessed performance with respect to requirements; evaluated failure reports and analyses, and corrective action implementations; established reliability models for use in models for systems and subsystems analysis; and used computer aided engineering tools such as PSpice, MathCAD and MatLab. *Id*.

On or about October 7, 2014, Plaintiff prepared a report using MathCad Files which contained proprietary information from another JPL contractor. Compl. ¶¶ 26-28. Plaintiff learned on October 7, 2014 that JPL should not have provided him access to the MathCad files under the terms of an agreement with a third party contractor which specifically excluded other contractors from any access to the third-party contractor's classified/proprietary documents. Compl. ¶¶ 25, 27-28. On that date, Plaintiff reported to JPL's Ethics Enforcement department that there was an attempt to cover-up his unauthorized access to the MathCad files. Compl. ¶ 28. On

---

[1] Solely for purposes of this Motion, ManTech assumes all of the allegations in the Complaint are true.

October 8, 2014, Plaintiff informed his supervisor that management needed to get involved and described his concerns. Compl. ¶ 29.

On October 17, 2014, Plaintiff was sent home without pay, and told to use a floating holiday for that day's pay. Compl. ¶ 34. On November 14, 2014, Plaintiff's status was reclassified as on furlough due to a funding reduction on the RESS contract. Compl. ¶ 35. On January 23, 2015, ManTech notified Plaintiff that his employment would terminate on February 6, 2015. Compl. ¶ 42. On April 3, 2017, Plaintiff filed this action against ManTech.

## III.
## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief. "A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the pleadings." *Silvas v. E*Trade Mortg. Corp.*, 421 F. Supp. 2d 1315, 1317 (S.D. Cal. 2006); see *also North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal is appropriate where the Complaint lacks a cognizable legal theory." *Id*.; see also *Neitzke v. Williams*, 490 U.S. 319, 326-27, 109 S. Ct. 1827 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.") (abrogated on other grounds); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984). A court may properly consider matters the subject of a judicial notice in ruling on a Rule 12(b)(6) motion. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

While a plaintiff does not have to attach to his complaint the documents on which the complaint is based, if the plaintiff fails to do so, a court may consider such documents when attached to a Rule 12(b)(6) motion. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (overruled on other grounds in *Porter v. Jones*, 319 F.3d 483, 494-95 (9th Cir. 2003) (stating the court may consider unattached documents if they are referred to in the complaint; are central to plaintiff's claim; and the authenticity is

not questioned).) Even where such documents are not incorporated in the plaintiff's complaint, the court may consider such documents to prevent the plaintiff from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which the claims are based. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998) (superseded by statute on another point of law).

"The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated [w]here plaintiff has actual notice . . . and has relied upon these documents in framing the complaint." *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3rd Cir.1997); see also *Yak v. Bank Brussels Lambert, BBL Holdings Inc.*, 252 F.3d 127, 130–31 (2nd Cir. 2001) (holding that a district court can consider a contract entered into by a plaintiff and defendant, where it met the three conditions of notice to plaintiff, authenticity, and centrality to the complaint). Where a court finds that the documents do not support the plaintiff's claim, the complaint may be dismissed for failure to state a claim. *See Branch*, 14 F.3d at 454.

## IV.
## ARGUMENT

### A. Count One of Plaintiff's Complaint for Retaliation Under the False Claims Act Should Be Dismissed Because it Fails to Comply With the Minimum Pleading Standards.

Plaintiff has failed to plead sufficiently that he engaged in protected activity under the FCA. To plead a *prima facie* case of FCA retaliation, a plaintiff must set forth facts that make it plausible that: (1) he engaged in "protected activity"; (2) his employer knew or was reasonably on notice that he was engaged in protected activity; and (3) his employer took adverse action against him as a result of his protected activity. The "whistleblower" provisions of the FCA state :

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other

> manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C.A. § 3730(h)(1). Thus, there are two types of "protected activity" under the FCA: (1) acts in furtherance of an FCA action, and (2) efforts to prevent a person from:

> (1) knowingly presenting, or causing to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
>
> (2) knowingly making, using, or causing to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;
>
> (3) conspireing to defraud the Government by getting a false or fraudulent claim allowed or paid;
>
> (4) having possession, custody, or control of property or money used, or to be used, by the Government and, intending to defraud the Government or willfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt;
>
> (5) authorizing to make or delivering a document certifying receipt of property used, or to be used, by the Government and, intending to defraud the Government, makes or delivers the receipt without completely knowing that the information on the receipt is true;
>
> (6) knowingly buying, or receiving as a pledge of an obligation or debt, public property from an officer or employee of the Government, or a member of the Armed Forces, who lawfully may not sell or pledge the property; or
>
> (7) knowingly making, using, or causing to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government.

See 31 U.S.C. § 3730. An employee engages in "protected activity" where (1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud against the government. *Moore v. Cal. Inst. Of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 845

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA 90067.3107
310.553.0308

5.

(9th Cir. 2002).

Here, Plaintiff does not allege that he acted in furtherance of the prosecution of ManTech or JPL to recover funds which ManTech or JPL fraudulently obtained from NASA. Further, Plaintiff does not allege that he attempted to stop violations of the FCA, such as the submission of a false claim for payment or knowing use of false records or statements to request payment from NASA. Rather, Plaintiff alleges that he notified JPL's Ethics Enforcement department and his supervisor at ManTech of an apparent attempt to cover-up his purported unauthorized access to information from a third-party contractor in violation of the third-party contractor's contract with JPL. Compl. ¶¶ 28-32, 49.

Plaintiff has not pled with sufficient particularity facts to establish a causal link between the alleged unauthorized use of a third-party contractor's information and any actual or potential presentment of a claim to NASA or any other federal agency for payment. Plaintiff has alleged no fact which makes it plausible that ManTech or JPL might seek payment for services not performed or costs which ManTech or JPL did not incur in connection with the contract with NASA or any other government agency. Plaintiff's conclusory assertion that "[h]e also feared that ManTech was presenting claims for payment to the government," Compl. ¶ 33, simply is not enough to infer that Plaintiff reasonably believed that JPL or ManTech was engaging in fraud. Accordingly, Plaintiff has failed to state a claim for retaliation under the FCA because the pled facts do not create an inference that he engaged in protected activity, and Count One should be dismissed.

**B.  Count Two of Plaintiff's Complaint Fails to Plead Adequately That Plaintiff Engaged in Protected Activity Under the DCWPA.**

Plaintiff has not pled adequately a *prima facie* case of retaliation in violation of the DCWPA. To plead a *prima facie* case of unlawful retaliation under the DCWPA, a plaintiff must set forth facts which make it plausible that: (1) he engaged in "protected activity"; (2) his employer knew or was reasonably on notice

that he was engaged in protected activity; and (3) his employer took adverse action against him as a result of his protected activity. The DCPWA provides:

> An employee of a contractor, subcontractor, grantee, or subgrantee or personal services contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2)[2] information that the employee reasonably believes is evidence of the following:
>
> (A) Gross mismanagement of a Department of Defense contract or grant, a gross waste of Department funds, an abuse of authority relating to a Department contract or grant, or a violation of law, rule, or regulation related to a Department contract (including the competition for or negotiation of a contract) or grant.
>
> (B) Gross mismanagement of a National Aeronautics and Space Administration contract or grant, a gross waste of Administration funds, an abuse of authority relating to an Administration contract or grant, or a violation of law, rule, or regulation related to an Administration contract (including the competition for or negotiation of a contract) or grant.
>
> (C) A substantial and specific danger to public health or safety.

10 U.S.C.A. § 2409(a)(1). Thus, "protected activity" is a disclosure of gross mismanagement[3], a gross waste of funds or a violation of law, rule or regulation to specific persons or governmental agencies or law enforcement.

Plaintiff alleges that he disclosed to JPL's Ethics Enforcement department and his supervisor at ManTech an apparent attempt to cover-up his purported unauthorized access to information from a third-party contractor in violation

---

[2] Paragraph 2 identifies the following persons or bodies: (1) a member of Congress or a representative of a committee of Congress, (2) an Inspector General, (3) the Government Accountability Office, (4) an employee of the Department of Defense or the National Aeronautics and Space Administration responsible for contract oversight or management, (5) an authorized office of the Department of Justice or other law enforcement agency, (6) a court or grand jury, or (7) a management official or other employee of the contractor or subcontractor who has the responsibility to investigate, discover, or address misconduct. 10 U.S.C.A. § 2409(a)(2).

[3] "Gross mismanagement" has been defined as a management action or inaction which creates a substantial risk of significant adverse impact upon the agency's ability to accomplish its mission. *White v. Dep't of the Air Force*, 63 M.S.P.R. 90, 95 (1994).

of the third-party contractor's contract with JPL. Compl. ¶¶ 28-32. Assuming that JPL's Ethics Enforcement department and/or Plaintiff's supervisor are empowered to investigate, discover, or address misconduct covered under the DCWPA, this allegation is not sufficient to make it plausible that he made ManTech or JPL aware that he was concerned about the possibility of a violation of an applicable law, rule or regulation. Simply reporting a possible ethical violation or breach of a contractual obligation based on a primary contractor's agreement with a third-party does not suffice to establish that Plaintiff was disclosing a violation of a law, rule or regulation. Accordingly, the Court should dismiss Count Two.

## C. Count Three of Plaintiff's Complaint Fails Because the JPL Ethics Enforcement Department is not a Government Agency.

Plaintiff's Labor Code § 1102.5 claim fails because Plaintiff has insufficiently pled allegations of a disclosure to a government agency of a violation of state or federal law by ManTech. Labor Code section 1102.5(b) provides:

> an employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

Ca. Lab. Code § 1102.5. To plead a *prima facie* case of retaliation under section 1102.5, a plaintiff must show (1) he engaged in a protected activity, (2) his employer subjected him to an adverse employment action, and (3) there is a causal link between the two. *Patten v. Grant Joint Union High School Dist.*, 134 Cal.App.4th 1378, 1384 (2005). An employee engages in protected activity when he discloses to a governmental agency '"reasonably based suspicions" of illegal activity. *Green v. Ralee Engineering Co*. (1998) 19 Cal.4th 66, 86-87; *Mokler v. County of Orange* (2007) 157 Cal.App.4th 121, 138.

Plaintiff alleges that he disclosed to JPL's Ethics Enforcement department an apparent attempt to cover-up his purported unauthorized access to information from a third-party contractor in violation of the third-party contractor's

8.

1  contract with JPL. Compl. ¶¶ 28-32. Plaintiff does not claim that JPL is a
2  government or law enforcement agency. Plaintiff alleges that JPL is "a federally
3  funded research and development center." Compl. 2:5-8. Even if JPL was a
4  government or law enforcement agency, Plaintiff does not allege with sufficient
5  specificity facts which make it plausible that he expressed to JPL that he suspected
6  noncompliance with a state or federal rule or regulation. Accordingly, the Court
7  should dismiss Count Three.

**D.  Count Four of Plaintiff's Complaint Fails Because ManTech's Standard of Ethics and Business Conduct (2012) is Not a Contract.**

Plaintiff's breach of contract claim fails because ManTech's 2012 Standards of Ethics and Business Conduct did not create a contractual relationship between Plaintiff and the company. A company policy, such as a code of ethics, may give rise to a contract between an employer and employee. *Aboulhosn v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 940 F.Supp.2d 1203, 1223 (C.D. Cal. 2013) quoting *Karrer v. Best Buy Co., Inc.*, No. LA CV 11–07697 JAK, 2012 WL 1957586, *3 (C.D. Cal. May 24, 2012). However, where the policy expressly states it is not intended to constitute a contract or to limit the employer's ability to terminate its employees at will, courts have held that the policy does not give rise to contractual rights. *Id.* citing *Ashbey v. Archstone Property Management, Inc.*, No. SACV 12–0009 DOC (RNBx), 2012 WL 1269122, *6 (C.D. Cal. Apr. 13, 2012) ("several California courts and district courts in California hold that no contract is created where an employer's documents state that its handbook does not create contractual rights, even if an employee signs a form agreeing to adhere to the employment handbook's policies," citing *Haggard v. Kimberly Quality Care, Inc.*, 39 Cal.App.4th 508, 515, 522–23, 46 Cal.Rptr.2d 16 (1995) (reversing a jury verdict for an employee on the basis that no contract was formed when the employee signed a form stating: "I am responsible for knowing and adhering to the Policies" in the handbook because the handbook stated it was "not intended to give rise to contractual rights or

obligations'")); *Bianco v. H.F. Ahmanson & Co.*, 897 F.Supp. 433, 439–40 (C.D. Cal.1995) ("An employee handbook which states on its face that it 'is not intended to constitute or create, nor is it to be construed to constitute or create, the terms of an employment contract' cannot be a promise or a commitment to future behavior. Plaintiff has presented no other evidence of a written employment contract. Therefore, the Court concludes that Defendants motion for summary adjudication on the second cause of action must be granted"); *Am. Mortg. Network v. LoanCity.com*, D044550, 2006 WL 3199291, *10 (Cal. App. Nov. 7, 2006) ("Case authority supports the proposition that an employee handbook containing ... an express disclaimer that it is not a binding contract creates no enforceable contractual rights," citing *Haggard*, 39 Cal. App.4th at 522–23, 46 Cal. Rptr.2d 16).139 *See also Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1138 (9th Cir.2003) (stating that "California law presumes at-will employment where contract terms do not specify otherwise," and that "[w]hile California courts will look to factors such as employer personnel policies, longevity of service, and assurances of continued employment in determining whether the employer's conduct 'gave rise to an implied-in-fact contract,' they have been careful not to interpret such factors too liberally," and holding, in light of employee's short term of employment and "explicit at-will provisions contained in her employment letter and employee handbook" that "no implied-in-fact contract was created that limited Amway's ability to terminate employment at any time").

Plaintiff alleges that his employment relationship with ManTech was governed by a contractual agreement as set forth in ManTech's 2012 Standards of Ethics and Business Conduct. Compl. ¶¶ 65-66. He further alleges that ManTech breached its contractual obligations under the 2012 Standards of Ethics and Business Conduct by retaliating against him for reporting concerns about misconduct to management. Plaintiff omits the fact that the 2012 Standards of Ethics and Business Conduct expressly states:

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA 90067.3107
310.553.0308

10.

> **No Rights Created**
>
> The Standards of Ethics and Business Conduct are a statement of the fundamental principles and key policies and procedures that govern business conduct. They are not intended to and do not create obligations to or rights in any employee, director, client, supplier, competitor, shareholder or any other person or entity.

2012 Standards of Ethics and Business Conduct. *See* Attachment 1(Declaration of Alison Davis, Ex. A).[4] Accordingly, the provisions of the 2012 Standards of Ethics and Business Conduct do not give rise to a contractual relationship between ManTech and Plaintiff, and Count Four must be dismissed.

### E. Count Five of Plaintiff's Complaint Fails Because Plaintiff Has Not Alleged With Sufficient Particularity Conduct

Recognizing that Count Four states no viable breach of express contract claim, Plaintiff recasts his claim as one for breach of implied-in-fact contract. Simply relabeling Plaintiff's claim is not sufficient for this claim to survive. Plaintiff has alleged no conduct which manifests an intent to waive the provision in ManTech's 2012 Standards of Ethics and Business Conduct that a contractual relationship is not created.

In *Retired Employees Assn. of Orange County, Inc. v. County of Orange* 52 Cal.4th 1171 (2011), the California Supreme Court outlined the nature of an implied contract:

> A contract is either express or implied. The terms of an express contract are stated in words. The existence and terms of an implied contract are manifested by conduct. The distinction reflects no difference in legal effect but merely in the mode of manifesting assent. Accordingly, a contract implied in fact "consists of obligations arising from a mutual

---

[4] As stated above, the Court can consider this exhibit which was not attached to the Complaint without converting this Rule 12(b)(6) motion to one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure because it is incorporated by reference in the Complaint.

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA 90067.3107
310.553.0308

11.

agreement and intent to promise where the agreement and promise have not been expressed in words."

*Id*. at 1178. The promise which Plaintiff alleges is "that ManTech would comply with the policies promulgated in the Standards of Ethics and Business Conduct and elsewhere," Compl. ¶ 72. That purported implied obligation ignores the disclaimer that "[The policies] are not intended to and do not create obligations to or rights in any employee, director, client, supplier, competitor, shareholder or any other person or entity." *Supra* at 11. Plaintiff alleges no fact which implies that ManTech through its conduct manifested its agreement that contractual rights would be created vis-a-vis Plaintiff. Accordingly, the Court should dismiss Count Five because Plaintiff has not pled properly a claim of breach of implied-in-fact contract.

**F.     Count Six of Plaintiff's Complaint Fails Because Plaintiff did not Have a Contract With ManTech.**

Plaintiff's claim that ManTech breached the implied covenant of good faith and fair dealing implied in his contractual relationship with ManTech is based on the 2012 Standards of Ethics and Business Conduct being a contract. Plaintiff correctly states that "[i]mplied in every California contract is a covenant of good faith and fair dealing," Compl. ¶ 77. *See Aboulhosn*, 940 F.Supp.2d at 1224 citing *Comunale v. Traders & General Ins. Co.*, 50 Cal. 2d 654, 658 (1958). However, there must be a contract upon which to infer that obligation.

For the reasons stated above, the 2012 Standards of Ethics and Business Conduct is not a contract. Plaintiff identifies no other employment contract to which he and ManTech were a party. Accordingly, the Court should dismiss Count Six.

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA 90067.3107
310.553.0308

12.

## V.
## CONCLUSION

For the reasons set forth above, the Court should dismiss Plaintiff's Amended Complaint in its entirety.

Dated: June 30, 2017

/s/ *ERIC A. COOK*
ERIC COOK
LITTLER MENDELSON, P.C.
Attorneys for Defendant
MANTECH INTERNATIONAL CORP.

Firmwide:148512483.1 082190.1008

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA 90067.3107
310.553.0308

13.