# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     **'O'**

| | |
|---|---|
| Case No. | 2:17-cv-02538-CAS(SSx)     Date   August 14, 2017 |
| Title | DAVID LILLIE v. MANTECH INT'L. CORP. ET AL. |

Present: The Honorable    **CHRISTINA A. SNYDER**

| Catherine Jeang | Laura Elias | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:     Attorneys Present for Defendants:

Esperanza Anderson     Alison Davis

**Proceedings:** DEFENDANT MANTECH INTERNATIONAL CORPORATION'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (Dkt. 19, filed June 30, 2017)

## I. INTRODUCTION

On April 3, 2017, plaintiff David Lillie ("plaintiff") filed this action against his former employer, ManTech International Corporation ("defendant" or "ManTech") and Does 1-20. Plaintiff alleges claims for (1) retaliation in violation of the False Claims Act, 31 U.S.C. § 3730(h), (2) retaliation in violation of the Defense Contractor Whistleblower Protection Act, 10 U.S.C. § 2409, (3) retaliation in violation of California Labor Code section 1102.5, (4) breach of contract, and (5) breach of the implied covenant of good faith and fair dealing. Dkt 1. The gravamen of plaintiff's complaint is that defendant terminated his employment because he reported unauthorized access to "classified/proprietary" information owned by a third-party government contractor.

After defendant moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), plaintiff timely filed the operative first amended complaint on June 16, 2017, which added a separate claim for breach of implied-in-fact contract. Dkt. 17 ("FAC"). On June 30, 2017, defendant filed the instant Rule 12(b)(6) motion to dismiss. Dkt. 19 ("Mtd."). On July 24, 2017, plaintiff filed his opposition, dkt. 21 ("Opp'n"), and defendant filed its reply on July 31, 2017, dkt. 22 ("Reply").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-02538-CAS(SSx) | Date | August 14, 2017 |
| Title | DAVID LILLIE v. MANTECH INT'L. CORP. ET AL. | | |

Having carefully considered the parties' arguments, the Court rules as follows.

## II. BACKGROUND

Plaintiff alleges the following facts.

ManTech had a contract to provide services to the California Institute of Technology's Jet Propulsion Lab ("JPL"), a federally funded research and development center. FAC at 1. In February 2007, ManTech hired plaintiff as a senior engineer to provide support in fulfillment of the "NASA [National Aeronautics and Space Administration] Jet Propulsion Laboratory and California Institute of Technology Reliability Engineering Support Services ('RESS') contract."[1] Id. ¶¶ 2, 14. Plaintiff directly supported several JPL projects, including the Mars Science Laboratory, the Soil Moisture Active Passive project, and the Juno project (a Jupiter orbiter mission). Id. ¶ 15. In this capacity, plaintiff performed various tasks related to assessing the reliability of electronic systems, and used several computer aided engineering tools including Mathcad. Id. ¶ 16.

Although plaintiff had received positive performance evaluations and healthy pay increases, "things changed . . . after he found it necessary to raise concerns about ManTech's failure to comply in material respects with federal contract rules relating to its performance under sensitive United States government procurement contracts." Id. ¶¶ 20, 22, 23. On July 28, 2014, plaintiff attended a "kick-off" meeting for a task related to the JPL Mars InSight Mission. Attendees at the meeting included Linda Facto ("Facto"), the JPL Mars Insight Mission Assurance Manager, and Chau Brown ("Brown"), the JPL Mars Insight Reliability Lead. At an impromptu meeting held immediately thereafter, Facto clearly stated that JPL's contract with a third-party government contractor specifically excluded other contractors, including but not limited to ManTech, from accessing the third-party contractor's "classified/proprietary" documents. Id. ¶ 25.[2]

---

[1] The FAC does not specifically describe the contractual relationships between NASA, the California Institute of Technology, JPL, and ManTech. In its motion to dismiss, defendant states that plaintiff was employed as a "systems engineer assigned to provide engineering support on a subcontract relating to the ['RESS'] prime contract between JPL and ['NASA']." Mtd. at 2.

[2] The identity of the third-party contractor is not specified in the FAC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-02538-CAS(SSx) | Date | August 14, 2017 |
| Title | DAVID LILLIE v. MANTECH INT'L. CORP. ET AL. | | |

However, plaintiff informed Brown that he required the third-party contractor's Mathcad files to assist in completing an assignment. Id. ¶ 26.

On or about August 7, 2014, Brown contacted the third-party contractor and requested access to the Mathcad files, but the request was denied. On September 1, 2014, JPL's Ernest Fierheller found copies of the files and placed them on a shared server. Plaintiff was told he could use the files even though the third-party contractor had expressly denied Brown's request for the same files. Id. ¶ 26. On September 5, 2014, Facto also requested and was denied permission to use the files by the third-party contractor. She forwarded the third-party contractor's response to Brown, in which the third-party contractor asserted that other contractors are prohibited from viewing the proprietary documents pursuant to its contractual agreement with JPL. This information was not provided to plaintiff, and Brown told him to "go ahead and use the files." Id. ¶ 27.

Plaintiff utilized the Mathcad files for his assignment in support of the Mars InSight Mission and forwarded a draft of his report to Brown at JPL. On October 7, 2014, plaintiff learned that he had never been authorized to access the Mathcad files when Brown demanded that he remove references to the files from his report. Plaintiff emailed Brown to ask if he had permission to use the files, and Brown responded: "Don't know . . . I do not think it will be an issue." Id. ¶ 28. Plaintiff was deeply troubled by this response and understood that he was required by federal law to report any matters that could affect his security clearance. Id. ¶¶ 28, 30. Plaintiff notified JPL's Ethics Enforcement Division of an apparent cover-up of conduct he "reasonably believed to be fraudulent" and in violation of restrictions on the third-party contractor's sensitive information. Id. ¶¶ 28, 49. He also wrote to his supervisor at ManTech, Erik Berg ("Berg"), requesting that management get involved, but received no response. Id. ¶¶ 29, 59. Plaintiff alleges, on information and belief, that Berg somehow discovered plaintiff had reported the issue to JPL's Ethics Enforcement Division. Id. ¶ 31.

Plaintiff alleges "Brown covered up the fact that a contractor (ManTech) was given third-party government contactor proprietary documents by JPL, with full knowledge this act was in violation of federal law as well as JPL's contractual agreement." Id. ¶ 32. Plaintiff "feared that ManTech was presenting claims for payment to the government and certifying its compliance with all relevant rules and regulations notwithstanding its willful non-compliance." Id. ¶ 33. Plaintiff further alleges that he "refused to participate in the cover-up of ManTech[']s unlawful use of classified information/documents" and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-02538-CAS(SSx) | Date | August 14, 2017 |
| Title | DAVID LILLIE v. MANTECH INT'L. CORP. ET AL. | | |

"refused to participate in activity that would result in violations of federal law, specifically the accessing of classified/proprietary documents without permission." Id. ¶¶ 59, 60.

Plaintiff alleges that his "employment relationship was governed, in relevant part, by ManTech's contractual agreements with its employees, including but not limited to the Standards of Ethics and Business Conduct." Id. ¶¶ 65, 69. These Standards allegedly "required employees to alert ManTech to ethical problems or compliance issues, agreeing, in exchange, that they will not suffer retaliation for raising such concerns." The Standards specifically provide: "As part of our Standards and in accordance with our policies, ManTech pledges to protect any employee making a good faith report from any type of retaliatory action." Id. ¶ 65. The Standards further provide that "ManTech and its employees are required by law to protect U.S. Government classified information, as well as many forms of technical and sensitive Government data. . . . You should contact your facility security office or the Corporate Security Department with any questions or to report a potential or actual violation of the security regulations and/or laws relating to the handling of classified or non-classified Government information." Id. ¶ 66.

On October 17, 2014, Berg sent plaintiff home without pay, advising him to use a floating holiday for that day's pay. Id. ¶ 34. On November 14, 2014, ManTech notified plaintiff that he had been retroactively placed on furlough due to a funding reduction on the RESS contract. Id. ¶ 35. He was placed on indefinite furlough on December 22, 2014. Id. ¶ 37. Concerned that ManTech's furlough decision was retaliatory, plaintiff contacted Congresswoman Judy Chu, whose office encouraged JPL's human resources department to conduct an internal investigation. JPL conducted a five-week investigation and concluded that violations of non-disclosure agreements had occurred, but that plaintiff's conduct was blameless. Id. ¶ 38. Plaintiff also filed a reprisal claim with the NASA Office of Inspector General. However, on January 17, 2017, plaintiff was notified that the NASA Office of Inspector General would take no action to investigate his claims. Id. ¶ 57. On January 23, 2015, ManTech notified plaintiff that his employment would terminate on February 6, 2015. Id. ¶ 42.

## III. LEGAL STANDARD

A motion pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-02538-CAS(SSx) | Date | August 14, 2017 |
| Title | DAVID LILLIE v. MANTECH INT'L. CORP. ET AL. | | |

under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

## IV.     DISCUSSION

Defendant filed the instant Rule 12(b)(6) motion requesting that this Court dismiss the FAC in its entirety. Defendant argues that plaintiff has failed to allege sufficient facts to support any of his statutory retaliation claims or a breach of any contractual obligation. Mtd. at 1. The Court will address plaintiff's claims in turn.

### A. False Claims Act Retaliation

Defendant moves to dismiss plaintiff's False Claims Act ("FCA") retaliation claim. The FCA imposes civil liability on "any person who . . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the government. 31

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-02538-CAS(SSx) | Date | August 14, 2017 |
| Title | DAVID LILLIE v. MANTECH INT'L. CORP. ET AL. | | |

U.S.C. § 3729(a)(1). "In an archetypal *qui tam* False Claims action, such as where a private company overcharges under a government contract, the claim for payment is itself literally false or fraudulent. The [FCA], however, is not limited to such facially false or fraudulent claims for payment." United States v. Univ. of Phx., 461 F.3d 1166, 1170 (9th Cir. 2006) (citing United States ex rel. Hopper v. Anton, 91 F.3d 1261, 1266 (9th Cir. 1996).) For example, under a false certification theory of FCA liability, a claim "can be false where a party merely falsely certifies compliance with a statute or regulation as a condition to government payment." Id. at p. 1171. Under any theory, the essential elements of FCA liability are: "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." Id. at 1174.

To protect employees who expose fraudulent claims against the government, the FCA includes a whistleblower protection provision that authorizes a cause of action for any employee who "is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of an action" under the FCA or "other efforts to stop" FCA violations. 31 U.S.C. § 3730(h). "A plaintiff alleging a FCA retaliation claim must show three elements: (1) that he or she engaged in activity protected under the statute; (2) that the employer knew the plaintiff engaged in protected activity; and (3) that the employer discriminated against the plaintiff because he or she engaged in protected activity." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1103 (9th Cir. 2008) (citations omitted.) Although "[s]pecific awareness of the FCA is not required. . . . [T]he plaintiff must be investigating matters which are calculated, or reasonably could lead, to a viable FCA action." Hopper, 91 F.3d at 1269. Thus, "an employee engages in protected activity where (1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud against the government." Moore v. Cal. Inst. of Tech. Jet Propulsion Lab., 275 F.3d 838, 846 (9th Cir. 2002).[3]

Defendant argues that plaintiff fails to state a claim for retaliation in violation of the FCA because he did not allege facts sufficient to show that he engaged in protected

---

[3] "[A] FCA retaliation claim 'does not require a showing of fraud and therefore need not meet the heightened pleading requirements of Rule 9(b).' " Mendiondo, 521 F.3d at 1103 (9th Cir. 2008) (quotation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-02538-CAS(SSx) | Date | August 14, 2017 |
| Title | DAVID LILLIE v. MANTECH INT'L. CORP. ET AL. | | |

activity under the statute. Mtd. at 4-6. Specifically, defendant argues that the FAC's conclusory allegations are insufficient to support an inference that plaintiff reasonably believed JPL or ManTech submitted false or fraudulent claims to the government. Mtd. at 6. However, reading the FAC in the light most favorable to plaintiff and drawing all reasonable inferences from its allegations, the Court concludes plaintiff has alleged facts sufficient to demonstrate he was engaged in activity protected under the FCA.

      Plaintiff alleges that ManTech's unauthorized access to the third-party contractor's "classified/proprietary" information violated both federal contract rules and JPL's agreement with the third-party contractor. FAC ¶¶ 23, 32. He alleges that JPL's Brown engaged in a cover-up by ordering plaintiff to delete references to the information with "full knowledge" that the use of the information "was in violation of federal law as well as JPL's contractual agreement." Id. ¶ 32. Plaintiff alleges that he reported the issue to both his supervisor at ManTech, Berg, and JPL's Ethics Enforcement Division. Id. ¶¶ 28, 29. Plaintiff further alleges, on information and belief, that Berg somehow discovered plaintiff had reported the issue to JPL's Ethics Enforcement Division. Id. ¶ 31. Based on the foregoing, plaintiff alleges that he "feared that ManTech was presenting claims for payment to the government and certifying its compliance with all relevant rules and regulations notwithstanding its willful non-compliance." Id. ¶ 33. These factual allegations are sufficient to allege that plaintiff was engaged in FCA-protected activity, namely, he in good faith believed, and a reasonable employee in similar circumstances might believe, that defendant was possibly committing fraud against the government by falsely certifying its compliance with federal contract rules. See Moore, 275 F.3d at 846.

      Defendant does not argue that plaintiff failed to satisfy the other two elements of an FCA retaliation claim. Nevertheless the Court concludes that plaintiff's allegations are sufficient at this stage to allege that ManTech knew or reasonably should have known the plaintiff was engaged in protected activity and discriminated against him for that reason. See Mendiondo, 521 F.3d at 1103. Plaintiff's alleged complaints to his supervisor at ManTech and JPL's Ethics Enforcement Division would have put ManTech on notice that plaintiff was engaged in efforts motivated by an objectively reasonable belief that ManTech was possibly committing fraud against the government. See Moore, 275 F.3d at 846. Moreover, the proximity between plaintiff's complaints and his subsequent furlough and termination is sufficient at this stage to support the allegation that plaintiff was discharged because of his protected activity. See, e.g., U.S. ex rel. Hagerty v. Cyberonics, Inc., 95 F. Supp. 3d 240 (D. Mass. 2015), aff'd sub nom. Hagerty ex rel. United States v. Cyberonics, Inc., 844 F.3d 26 (1st Cir. 2016).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL     'O'

| Case No. | 2:17-cv-02538-CAS(SSx) | Date | August 14, 2017 |
|---|---|---|---|
| Title | DAVID LILLIE v. MANTECH INT'L. CORP. ET AL. | | |

Accordingly, defendant's motion to dismiss is **DENIED** as to plaintiff's first claim for retaliation in violation of the FCA.

### B. Defense Contractor Whistleblower Protection Act

Defendant next moves to dismiss plaintiff's claim under the Defense Contractor Whistleblower Protection Act ("DCWPA"), which prohibits retaliation against employees of defense and aerospace contractors who report certain types of misconduct. See 10 U.S.C. § 2409(a)(1). Under that statute, "[a] employee of a contractor [or] subcontractor . . . may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing . . . information that the employee reasonably believes is evidence of . . . [g]ross mismanagement," "gross waste of funds," "abuse of authority," or "a violation of law, rule, or regulation related to" a Department of Defense or NASA contract or grant. Id. The DCWPA protects such disclosures to, among others, "[a] Member of Congress," "[a]n Inspector General," and "[a] management official or other employee of the contractor . . . who has a responsibility to investigate, discover, or address misconduct." Id. § 2409(a)(2).

The elements of a DCWPA retaliation claim mirror those under the FCA: a plaintiff must establish that "(1) he engaged in 'protected activity'; (2) his employer knew or was reasonably on notice that he was engaged in protected activity; and (3) his employer took adverse action against him as a result of his protected activity." United States ex rel. Cody v. Mantech Int'l Corp., 207 F. Supp. 3d 610, 621 (E.D. Va. 2016). Although the case law interpreting the scope "protected activity" under 10 U.S.C. § 2409 is limited, "given the DCWPA's statutory language ('disclosing . . . a violation of law, rule, or regulation'), the DCWPA would appear to include as 'protected activity' any conduct protected under the FCA." Id. Moreover, "protected activity under the DCWPA would include a 'disclosure' that places an employer on objectively reasonable notice that what is being disclosed is a 'violation of a law, rule, or regulation related to a Department [of Defense or NASA] contract (including the competition for or negotiation of a contract) or grant." Id. at 623 (quoting 10 U.S.C. § 2409(a)(1)).

Defendant contends that plaintiff's allegations fail to establish that he was engaged in protected activity under the DCWPA. Defendant argues that "[s]imply reporting a possible ethical violation or breach of a contractual obligation . . . does not suffice to establish that Plaintiff was disclosing a violation of law, rule or regulation." Mtd. at 8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | CIVIL MINUTES - GENERAL | | 'O' |
| Case No. | 2:17-cv-02538-CAS(SSx) | Date | August 14, 2017 |
| Title | DAVID LILLIE v. MANTECH INT'L. CORP. ET AL. | | |

However, plaintiff also alleges that defendant failed to comply with federal contract rules by accessing the third-party contractor's "classified/proprietary" information without authorization, and that JPL's Brown engaged in a cover up with full knowledge that this conduct violated federal law. FAC ¶¶ 23, 25, 32. Plaintiff further alleges that he reported the issue to Congresswoman Judy Chu's Office and filed a complaint with the NASA Office of Inspector General. FAC ¶¶ 38, 57. These allegations are sufficient to demonstrate that plaintiff disclosed "a violation of law, rule, or regulation related to" a NASA contract to several appropriate persons and entities, and consequently was engaged in protected activity under the DCWPA. See 10 U.S.C. §§ 2409(a)(1)-(2). As with the FCA retaliation claim, the Court concludes plaintiff's allegations are sufficient at this stage to demonstrate that defendant knew or was reasonably on notice that plaintiff was engaged in protected activity and took adverse action against him as a result.

Accordingly, defendant's motion to dismiss is **DENIED** as to plaintiff's second claim for retaliation in violation of the DCWPA.

### C. California Labor Code Section 1102.5 Retaliation

Defendant moves to dismiss plaintiff's claim for retaliation in violation of Labor Code § 1102.5. This whistleblower statute provides, in relevant part, that "[a]n employer . . . shall not retaliate against an employee for disclosing information . . . to a government or law enforcement agency [or] to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation." Cal. Lab. Code, § 1102.5(b). The statute further provides that "[a]n employer . . . shall not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation." Id. § 1102.5(c). To establish a prima facie case of retaliation under § 1102.5(b), a plaintiff must show that: (1) he engaged in protected activity; (2) his employer thereafter subjected him to an adverse employment action; and (3) a causal link between the two. Soukup v. Law Offices of Herbert Hafif, 39 Cal. 4th 260, 287–88, 139 P.3d 30, 48 (2006).

Defendant argues that plaintiff fails to state a claim under this whistleblower statute because "he did not make disclosures to a government or law enforcement agency

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-02538-CAS(SSx) | Date | August 14, 2017 |
| Title | DAVID LILLIE v. MANTECH INT'L. CORP. ET AL. | | |

as required under section 1102.5." Reply at 10; Mtd. at 8-9. This contention relies on a prior version of section 1102.5(b), which prohibited retaliation only where the employee disclosed violations to a government or law enforcement agency. However, amendments enacted in 2013 expanded the scope of protected activity under section 1102.5(b), which now includes disclosures "to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance." See Robles v. Agreserves, Inc., 158 F. Supp. 3d 952, 1007 (E.D. Cal. 2016). In the FAC, plaintiff alleges that he "complained to his direct supervisor, Erik Berg, and also complained to JPL's Ethics Enforcement of ManTech's unlawful use of classified information/documents. At all times, JPLs Ethics Enforcement had the authority to prevent ManTech from improperly accessing and using the classified information/documents." FAC ¶ 59. These allegations are sufficient to allege that plaintiff was engaged in protected activity under section 1102.5(b).

The FAC also alleges that plaintiff "refused to participate in activity that would result in violations of federal law, specifically the accessing of classified/proprietary documents without permission." FAC ¶ 60. Plaintiff contends that this seemingly conclusory statement mirroring the language in section 1102.5(c) is supported by the allegation that he refused to delete references to the third-party contractor's protected files from his report, and then reported Brown's purported cover-up attempt to his supervisor at ManTech and JPL's Ethics Enforcement Division. Opp'n at 12. The FAC does not specifically allege that plaintiff refused to comply with Brown's request that he delete references to the protected files. However, the FAC's allegations support a reasonable inference that once plaintiff discovered he was not authorized to access the files, he effectively refused to participate in activity he alleges violated federal law by lodging complaints with both his supervisor at ManTech and the JPL Ethics Enforcement Division. Consequently, the FAC also sufficiently alleges that plaintiff was engaged in protected activity under section 1102.5(c). As with the other statutory retaliation claims, the Court also concludes the allegations are sufficient at this stage to satisfy the other two elements of a prima facie case for retaliation under Labor Code § 1102.5. See Soukup, 39 Cal. 4th at 287–88.

Accordingly, defendant's motion to dismiss is **DENIED** as to plaintiff's third claim for retaliation in violation of Labor Code § 1102.5.[4]

---

[4] In opposition to defendant's motion to dismiss, plaintiff argues for the first time that he was retaliated against for disclosing ManTech's misappropriation of the third-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-02538-CAS(SSx) | Date | August 14, 2017 |
| Title | DAVID LILLIE v. MANTECH INT'L. CORP. ET AL. | | |

### D. Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing Claims

Defendant moves to dismiss plaintiff's claims for breach of contract, breach of implied-in-fact contract, and breach of the implied covenant of good faith and fair dealing. Mtd. at 9-12. All of these claims are based on plaintiff's allegation that his "employment relationship was governed, in relevant part, by ManTech's contractual agreements with its employees, including but not limited to the Standards of Ethics and Business Conduct."[5] FAC ¶¶ 65, 69, 78. Plaintiff contends this policy document created an enforceable contract by "requir[ing] employees to alert ManTech to ethical problems or compliance issues, agreeing, in exchange, that they will not suffer retaliation for raising such concerns."[6] Id. ¶¶ 65, 69, 78. Plaintiff alleges that defendant breached this

---

party contractor's trade secrets in violation of the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 et seq. Opp'n at 1-7. In light of the Court's order denying defendant's motion to dismiss plaintiff's statutory retaliation claims, the Court need not reach this assertion.

[5] The FAC references ManTech's Standards of Ethics and Business Conduct extensively but the document was not attached as an exhibit. See FAC ¶¶ 65, 66, 69. Defendant attached a copy of the document with a supporting affidavit to its motion to dismiss. Mtd. Ex. A. In ruling on a Rule 12(b)(6) motion, a court generally cannot consider material outside of the complaint. See Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). A court may, however, consider exhibits submitted with the complaint. See id. at 453–54. Also, a court may consider documents which are not physically attached to the complaint but "whose contents are alleged in [the] complaint and whose authenticity no party questions." Id. at 454. Because the FAC relies on the contents of ManTech's Standards of Ethics and Business Conduct and plaintiff does not dispute the authenticity of the version attached to defendant's motion, the Court will consider defendant's attached exhibit.

[6] The Standards of Ethics and Business Conduct notes that "ManTech and its employees are required by law to protect U.S. Government classified information, as well as many forms of technical and sensitive Government data" and informs employees that they should contact a security officer "to report a potential or actual violation of the security regulations and/or laws relating to the handling of classified or non-classified Government information." FAC ¶ 66; Mtd. Ex. A at 7. The document further states that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-02538-CAS(SSx) | Date | August 14, 2017 |
| Title | DAVID LILLIE v. MANTECH INT'L. CORP. ET AL. | | |

contractual obligation by terminating his employment "for reporting the unlawful use of classified information and documents both internally at ManTech and to JPL Ethics Enforcement." Id. ¶ 74. However, as defendant argues in its motion to dismiss, the Standards of Ethics and Business Conduct also contains an express disclaimer, which states, under the heading "No Rights Created," that "[t]he Standards of Ethics and Business Conduct . . . are not intended to and do not create obligations to or rights in any employee." Mtd. Ex. A at 9. Defendant argues that this disclaimer forecloses plaintiff's breach of contract and implied covenant claims as a matter of law. Mtd. at 9-12.

"California law presumes at-will employment where contract terms do not specify otherwise." Xin Liu v. Amway Corp., 347 F.3d 1125, 1138 (9th Cir. 2003). Although "a company policy, such as that evidenced in a handbook or employer policy memorandum, may give rise to a contract between employer and employee," Karrer v. Best Buy Co., No. LA CV 11-07697 JAK, 2012 WL 1957586, at *3 (C.D. Cal. May 24, 2012), courts have generally held that a policy containing an express disclaimer creates no enforceable contractual rights. For example, in Bianco v. H.F. Ahmanson & Co., 897 F. Supp. 433 (C.D. Cal. 1995), the court concluded an employee handbook was not a contract based on the following statement: "The language used in this Handbook is not intended to constitute or create, nor is it to be construed to constitute or create, the terms of an employment contract between the Company and/or its affiliates and any of its employees." Id. at 439. The court observed: " 'It is the most fundamental principle of contract law that there can be no legally enforceable obligation without a promise, a commitment to future behavior.' An employee handbook which states on its face that it 'is not intended to constitute or create, nor is it to be construed to constitute or create, the terms of an employment contract' cannot be a promise or a commitment to future behavior." Id. at 439-440; see also Ashbey v. Archstone Property Management, Inc., No. SACV 12–0009 DOC (RNBx), 2012 WL 1269122, *6 (C.D. Cal. Apr. 13, 2012) ("several California courts and district courts in California hold that no contract is created where an employer's documents state that its handbook does not create contractual rights, even if an employee signs a form agreeing to adhere to the employment handbook's policies").

---

"[a]ll ManTech employees are required . . . to report potential violations of these Standards. As part of our Standards and in accordance with our policies, ManTech pledges to protect any employee making a good faith report from any type of retaliatory action." FAC ¶ 65; Mtd. Ex. A at 4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-02538-CAS(SSx) | Date | August 14, 2017 |
| Title | DAVID LILLIE v. MANTECH INT'L. CORP. ET AL. | | |

Plaintiff's claim for breach of contract alleges that the purported agreement not to retaliate against good faith complainants was express and memorialized in ManTech's Standards of Ethics and Business Conduct. FAC ¶ 65; Opp'n at 12. But in view of the express disclaimer in the Standards of Ethics and Business Conduct, plaintiff cannot state a claim for breach of contract because the document created no enforceable contractual rights. Plaintiff also alleges that defendant breach an implied-in-fact contract because he "reasonably relied on the policies in the Standards of Ethics and Business Conduct, as the terms and conditions of his employment." FAC ¶ 65. Although an implied-in-fact contract may be established by examining the "totality of the circumstances" surrounding the parties' conduct, see Foley v. Interactive Data Corp., 47 Cal. 3d 654, 681, 765 P.2d 373, 388 (1988), plaintiff cannot state a claim for breach of implied contract by relying exclusively on a policy document containing an express disclaimer. Finally, plaintiff's claim that defendant breached the implied covenant of good faith and fair dealing also necessarily fails because the covenant is an implied contract term, and plaintiff cannot allege the existence of either an express or implied contract based solely on the policy document. See Guz v. Bechtel Nat. Inc., 24 Cal. 4th 317, 349–50, 8 P.3d 1089, 1110 (2000).[7]

Accordingly, defendant's motion to dismiss is **GRANTED** as to plaintiff's fourth, fifth, and sixth claims for breach of contract, breach of implied-in-fact contract, and breach of the implied covenant of good faith and fair dealing.

## V. CONCLUSION

In accordance with the foregoing the Court **GRANTS** in part and **DENIES** in part defendant's motion to dismiss. Specifically, the Court **DENIES** defendant's motion to dismiss plaintiffs' first, second, and third claims. The Court **GRANTS** defendant's motion to dismiss plaintiff's fourth, fifth, and sixth claims and **DISMISSES** those claims **WITHOUT PREJUDICE**. If plaintiff believes that he may cure the deficiencies in his

---

[7] Even though plaintiff fails to state a claim for breach of contract based on the allegations in his complaint, the Court construes those allegations to be more in the nature of a tort claim for wrongful discharge in violation of public policy. See Tameny v. Atl. Richfield Co., 27 Cal. 3d 167, 610 P.2d 1330 (1980). An employer's obligation to refrain from discharging an employee in violation of public policy does not depend on the terms and conditions of the employment contract. See Foley, 47 Cal. 3d at 667–68.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      **'O'**

| Case No. | 2:17-cv-02538-CAS(SSx) | Date | August 14, 2017 |
|---|---|---|---|
| Title | DAVID LILLIE v. MANTECH INT'L. CORP. ET AL. | | |

claims for breach of contract, breach of implied-in-fact contract, and breach of the implied covenant of good faith and fair dealing, he is hereby granted **thirty days (30)** in which to file an amended complaint addressing the deficiencies in those claims. Failure to file an amended complaint may result in dismissal of these claims with prejudice.

IT IS SO ORDERED.

|  | 00 : 04 |
|---|---|
| Initials of Preparer | CMJ |