**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:17-cv-02538-CAS-SSx | Date | December 3, 2018 |
|---|---|---|---|
| Title | DAVID LILLIE v. MANTECH INT'L. CORP. ET AL. | | |

Present: The Honorable    **CHRISTINA A. SNYDER**

| Catherine Jeang | Lisa Gonzalez | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Jan Aune | Alison Davis |
| | Jina Lee |

**Proceedings:**     PRETRIAL CONFERENCE

DEFENDANT'S MOTION IN LIMINE No. 1 TO EXCLUDE EVIDENCE REGARDING PLAINTIFF'S ECONOMIC DAMAGES (Dkt. 75, filed September 24, 2018)

DEFENDANT'S MOTION IN LIMINE No. 2 TO EXCLUDE TESTIMONY FROM PLAINTIFF'S EXPERT LESLIE MICHELLE DAUGHERTY (Dkt. 76, filed September 24, 2018)

DEFENDANT'S MOTION IN LIMINE No. 3 TO EXCLUDE LAY WITNESS TESTIMONY REGARDING PLAINTIFF'S DIAGNOSIS AND THE CAUSE OF HIS ALLEGED EMOTIONAL DISTRESS (Dkt. 77, filed September 24, 2018)

DEFENDANT'S MOTION IN LIMINE No. 4 TO PRECLUDE PLAINTIFF FROM OFFERING ANY EVIDENCE REGARDING THE JET PROPULSION LABORATORY'S ALLEGED NON-COMPLIANCE IN RESPONSE TO SUBPOENAS (Dkt. 78, filed September 24, 2018)

DEFENDANT'S MOTION IN LIMINE No. 5 TO EXCLUDE TESTIMONY FROM PLAINTIFF'S EXPERT RICHARD FETTIG (Dkt. 79, filed September 24, 2018)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | CIVIL MINUTES – GENERAL | | 'O' |
| Case No. | 2:17-cv-02538-CAS-SSx | Date | December 3, 2018 |
| Title | DAVID LILLIE v. MANTECH INT'L. CORP. ET AL. | | |

## I. INTRODUCTION AND BACKGROUND

On April 3, 2017, plaintiff David Lillie filed this action against his former employer, defendant ManTech International Corporation ("ManTech"). Plaintiff alleges that defendant wrongfully retaliated against plaintiff by terminating his employment after plaintiff reported that he had received allegedly-unauthorized access to "classified/proprietary" information owned by a third-party government contractor. Specifically, plaintiff alleges claims for (1) retaliation in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3730(h), (2) retaliation in violation of the Defense Contractor Whistleblower Protection Act ("DCWPA"), 10 U.S.C. § 2409, and (3) retaliation in violation of California Labor Code § 1102.5(b) ("Section 1102.5"). Dkt 1.[1]

Defendant filed a motion for summary judgment on August 17, 2018, dkt. 46; which the Court denied on September 24, 2018. Dkt. 80. That same day, defendant filed five motions in limine, dkt. 75 ("MIL 1); dkt. 76 ("MIL 2); dkt. 77 ("MIL 3"); dkt. 78 ("MIL 4"); dkt. 79 ("MIL 5"), along with supporting declarations and exhibits. Plaintiff filed opposition briefs to four of the motions in limine on November 13, 2018. Dkt. 95 ("Opp'n 1"); Dkt. 96 ("Opp'n 2"); Dkt. 97 "(Opp'n 3"); Dkt. 98 ("Opp'n 5").[2]

The Court held a hearing on December 3, 2018. Having carefully considered the parties' arguments, the Court rules as follows.

## II. LEGAL STANDARD

A motion in limine is "a procedural device to obtain an early and preliminary ruling on the admissibility of evidence." Goodman v. Las Vegas Metro. Police Dep't, 963 F. Supp. 2d 1036, 1046 (D. Nev. 2013). Trial courts have broad discretion when ruling on such motions. See Jenkins v. Chrysler Motor Corp., 316 F.3d 664, 664 (7th

---

[1] Although plaintiff's complaint initially alleged additional claims of (1) breach of contract, and (2) breach of the implied covenant of good faith and fair dealing, the Court dismissed these claims on August 14, 2017, in response to defendant's motion to dismiss. Dkt. 23.

[2] Plaintiff filed initial opposition briefs on October 1, 2018, seeking an extension for filing its opposition briefs because defendant failed to meet and confer, as required by Local Rule 7-3. See Dkts. 75, 76, 77, 78, 79 (citing L.R. 7-3). The parties then stipulated to continue the hearing until December 3, 2018, which the Court granted. Dkt. 93.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-02538-CAS-SSx | Date | December 3, 2018 |
| Title | DAVID LILLIE v. MANTECH INT'L. CORP. ET AL. | | |

Cir. 2002). Moreover, such rulings are provisional and "not binding on the trial judge" on the court. Ohler v. United States, 529 U.S. 753, 758 n.3 (2000). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." Ind. Ins. Co. v. Gen. Elec. Co., 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).

### III. DISCUSSION

#### A. Defendant's Motion in Limine 1 to Exclude Evidence Pertaining to Plaintiff's Economic Damages

In its first motion in limine, defendant asks this Court to exclude evidence pertaining to plaintiff's economic damages. Defendant first argues that plaintiff should be prohibited from presenting evidence of economic damages because plaintiff rejected an offer of continued part-time employment. MIL 1 at 1. In the alternative, defendant contends that plaintiff's damages should be limited to lost wages—excluding emotional distress damages and/or punitive damages—because plaintiff never provided a computation of these other damages. Id. at 3 – 4. Moreover, defendant argues that the damages for lost wages should not extend past (1) April 2015, when plaintiff engaged in misconduct that would have resulted in termination (2) March 2017, when plaintiff stopped seeking alternative employment, and therefore failed to mitigate. Id. at 1. Defendant claims that plaintiff engaged in misconduct that would have resulted in termination when plaintiff took and refused to return confidential and proprietary information, in violation of his confidentiality agreements. Id. at 3 (citing Dkt. 47-1, Declaration of Erik Berg ("Berg Decl.")). Accordingly, defendant argues that the after-acquired doctrine limits plaintiff's damages. MIL 1 at 5 (citing McKennon v. Nashville Banner Pub., 513 U.S. 352, 362 (1995)).

In response, plaintiff contends that it never refused any full-time work with defendant, and that plaintiff "exercised reasonable diligence in attempting to find new employment following his termination." Opp'n 1 at 2 – 3. Plaintiff also alleges that he provided damage calculations in an April 2, 2018 settlement demand email, where plaintiff "put Defendant on notice that Plaintiff was requesting $2,000,000 in emotional distress damages and $8,500,000 in punitive damages." Id. at 3 (citing dkt. 95-2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-02538-CAS-SSx | Date | December 3, 2018 |
| Title | DAVID LILLIE v. MANTECH INT'L. CORP. ET AL. | | |

Declaration of Jan Aune ("Aune Decl.") ¶ 3).[3] Additionally, plaintiff contends that, contrary to defendant's allegations, plaintiff returned the alleged proprietary files twenty-three days before defendant notified plaintiff of the alleged violation of his confidentiality agreements. Opp'n 1 at 4; dkt. 95-1 Declaration of David Lillie ("Lillie Decl.") at 2. Accordingly, plaintiff argues that his damages should not be limited. Opp'n 1 at 4.

First, the Court will not exclude evidence of plaintiff's damages on the basis of inadequate calculations. Importantly, however, plaintiff's settlement demand letter cannot come into evidence. Plaintiff may testify to experiencing emotional distress, but he cannot attempt to quantify it. That is a determination for the jury at trial.

The Court declines to exclude evidence, based on the record before it, that plaintiff's damages should be limited because plaintiff inadequately mitigated. As a preliminary matter, defendant cites no authority that mitigation is required under the FCA or DCWPA, but under similar retaliation statutes, a wrongfully-terminated plaintiff is required to mitigate his damages by pursuing substitute employment. See Odima v. Westin Tucson Hotel, 53 F.3d 1484, 1497 (9th Cir. 1995) ("Title VII requires the claimant to use reasonable diligence in finding other suitable employment.")(citations omitted); Jackson v. Shell Oil Co., 702 F.2d 197, 201 (9th Cir. 1983) ("An ADEA plaintiff has a duty to mitigate damages by using reasonable care and diligence in seeking suitable alternative employment."); see also Alaska Fish & Lumber Co v. Chase, 128 F. 886, 890 (9th Cir. 1904) ("The plaintiff's duty (if he was improperly discharged) was to use prompt and []reasonable diligence to procure other employment of a similar character, and thus reduce the damages; and, if he did not conform to that duty, the damages should be mitigated to the extent of the compensation which he might have received by proper effort in seeking employment."). Since plaintiff does not contest this obligation, the court will assume the same duty applies to the FCA and DCWPA. Similarly, with regard to plaintiff's California claim, "[u]nder California law, an employer's liability is reduced by the amount the employee earned or with reasonable diligence could have earned after her discharge." Kern v. Levolor Lorentzen, Inc., 899 F.2d 772, 778 (9th Cir. 1990), disapproved on other grounds by Guz v. Bechtel Nat. Inc., 24 Cal. 4th 317, 8 P.3d 1089 (2000).

Importantly, however, "[t]he reasonableness of a plaintiff's efforts to mitigate is a

---

[3] On November 29, 2018, plaintiff also filed plaintiff's second supplemental responses to defendant's interrogatories. Dkt. 105. The supplemental responses do not alter the Court's ruling herein.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-02538-CAS-SSx | Date | December 3, 2018 |
| Title | DAVID LILLIE v. MANTECH INT'L. CORP. ET AL. | | |

question of fact for jury determination." Jackson, 702 F.2d at 202. While plaintiff testified in deposition that he stopped looking for jobs roughly in March of 2017, he also testified that he made "tons and tons of tries" in attempting to find work. See Dkt. 75-2, Ex. E, Deposition of David Lillie ("Lillie Depo") 96:6-97:7. The Court cannot find this inadequate as a matter of law. Whether the duty to mitigate also required plaintiff to accept part-time work offered by defendant following plaintiff's termination, is similarly a question for the jury.

Defendant also seeks to exclude plaintiff's evidence of economic damages pursuant to the after-acquired doctrine because defendant alleges that, after plaintiff's termination, defendant learned of misconduct that would have led to plaintiff's termination had defendant known then. MIL 1 at 5 (citing McKennon, 513 U.S. at 362.). However, as defendant notes, the after-acquired doctrine only applies to misconduct that occurred "during [plaintiff's] employment that would have led to termination had the employer known beforehand." Id.

Here, the Court is unclear on the timing of plaintiff's alleged misconduct. Defendant states that on April 13, 2015—roughly three months following plaintiff's termination—defendant learned that plaintiff took proprietary information belong to the Jet Propulsion Lab ("JPL"), a client of defendant's. MIL 1 at 3. Defendant asserts that it then asked plaintiff, in a letter, to return any confidential information, but plaintiff did not respond. Id. Plaintiff states, in a sworn declaration, that he had returned files to JPL on or about April 13, 2015, and thus states that his damages should not be limited. Opp'n 1 at 4 (citing Dkt. 95-1 ("Lillie Decl.") ¶2). In his March 2018 deposition, plaintiff also acknowledged that he returned a CD of files to JPL after his termination. Dkt. 59-1 ("Lillie Depo. 1") 120:14:34.

In order to determine whether the after-acquired doctrine applies to this case, the Court must understand when plaintiff's alleged misconduct occurred—during his time of employment, or after his termination. The Court asks the parties to clarify whether plaintiff allegedly took proprietary information that he was not entitled to access during his employment, which plaintiff subsequently failed to return, or whether plaintiff allegedly failed to return proprietary information, after he was terminated, that had properly been in plaintiff's possession during his time of employment.

The Court requests supplemental briefing on the specific facts and chronology of events surrounding plaintiff's alleged taking of JPL's proprietary information. The parties should clarify when plaintiff allegedly took the confidential information and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-02538-CAS-SSx | Date | December 3, 2018 |
| Title | DAVID LILLIE v. MANTECH INT'L. CORP. ET AL. | | |

should specify his employment status at that time. If plaintiff was employed at the alleged time of the taking, the parties should specify whether plaintiff was entitled to access the information during his time of employment. Finally, if plaintiff was entitled to access the proprietary information during his employment, the Court requests the parties to specify when plaintiff was required to return the data. The Court also requests the parties to identify all non-disclosure agreements ("NDA") and confidentiality agreements that plaintiff signed with defendant, JPL, and/or Lockheed Martin that relate to this case. The parties should indicate which agreements, if any, plaintiff allegedly violated. If the parties have any additional case law relevant to the after-acquired doctrine, they should include it in the supplemental brief.

This supplemental briefing should be filed no later than **December 17, 2018**. It is limited to ten (10) pages in length.

### B. Defendant's Motion in Limine 2 to Exclude Testimony from Plaintiff's Expert Leslie Michelle Daugherty

In its second motion in limine, defendant moves to exclude the non-retained expert testimony of Leslie Michelle Daugherty ("Daugherty"), a Marriage and Family Therapist at Kaiser Permanente. MIL 2 at 1. In a 35-minute appointment, Daugherty assessed plaintiff and diagnosed him with anxiety symptoms, insomnia, and poor sleep. MIL 2 at 1. Plaintiff seeks Daugherty to testify as a non-retained expert who will "testify regarding any diagnosis and/or treatment for Plaintiff related to the harassment and/or retaliation he was subjected to at ManTech and that is the subject of this lawsuit," as well as regarding "any harassment and/or retaliation that plaintiff experienced with NASA Jet Propulsion Laboratory," the government entity for which plaintiff worked as a contractor. Dkt. 75-2, Ex. D. ("Plaintiff's Expert Disc.") ¶ 2.

Federal Rule of Evidence 702 allows for expert testimony, subject to certain requirements and conditions:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-02538-CAS-SSx | Date | December 3, 2018 |
| Title | DAVID LILLIE v. MANTECH INT'L. CORP. ET AL. | | |

Fed. R. Evid. 702. The Rule 702 inquiry "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592–93 (1993). The district court must also "ensure that the proposed expert testimony is relevant and will serve to aid the trier of fact. . . . Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact." United States v. Finley, 301 F.3d 1000, 1008 (9th Cir. 2002) (citing Daubert, 509 U.S. at 591–93). Daubert's "gatekeeping obligation" "applies not only to testimony based on 'scientific' knowledge but also to testimony based on 'technical' and 'other specialized' knowledge." Kumho Tire Company v. Carmichael, 526 U.S. 137, 141 (1999). "[I]n considering the admissibility of testimony based on some 'other specialized knowledge,' Rule 702 generally is construed liberally." United States v. Hankey, 203 F.3d 1160, 1168 (9th Cir. 2000).

Under Rule 702(a), the scope of an expert's testimony is limited to "help[ing] the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. "[A]n expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law," because "'[w]hen an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's.'" United States v. Diaz, 876 F.3d 1194, 1197 (9th Cir. 2017) (citing United States v. Duncan, 42 F.3d 97, 101 (2d Cir. 1994)).

Defendant moves to exclude Daugherty's expert testimony. Defendant argues that because Daugherty stated in her deposition that she could not remember certain details about plaintiff's appointment, and because Daugherty acknowledged that multiple factors—not simply plaitniff's workplace situation—could have led to plaintiff's anxiety, Daugherty's opinion would not be helpful to factfinder. MIL 2 at 3, 5. "Simply put, a factfinder would not know what to do with Daugherty's hedging and problematic testimony and it invites speculation on the causation issue." Id. at 3. Defendant further contends that Daugherty's opinion is not based on facts, data, or reliable methodologies, as required by Rule 702, but on plaintiff's own assertions about his emotional distress. Id. at 4.

The Court finds defendant's arguments to exclude Daugherty unavailing. The Ninth Circuit has made clear that, "[t]he medical opinion of a treating physician is entitled to special weight." Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (citing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-02538-CAS-SSx | Date | December 3, 2018 |
| Title | DAVID LILLIE v. MANTECH INT'L. CORP. ET AL. | | |

Burkhart v. Bowen, 856 F.2d 1335, 1339 (9th Cir.1988)). Additionally, a treating clinician may "testify to and opine on what they saw and did without the necessity of the proponent of the testimony furnishing a written expert report." Goodman v. Staples The Office Superstore, LLC, 644 F.3d 817, 819 (9th Cir. 2011). Daugherty is a licensed marriage and family therapist who treats patients at a well-known medical group, Kaiser Permanente.[4] She treated plaintiff in her capacity as a clinician and may testify regarding the medical condition for which Daugherty treated plaintiff. See Sprague v. Liberty Mut. Ins. Co., 177 F.R.D. 78, 81 (D.N.H. 1998) ("The majority of other courts in the country have concluded that Rule 26(a)(2)(B) reports are not required as a prerequisite to a treating physician expressing opinions as to causation, diagnosis, prognosis and extent of disability where they are based on the treatment."). Whether Daugherty, as plaintiff's treating clinician, has a sufficient basis for her opinions on plaintiff's diagnosis is a subject for cross-examination.

However, Daugherty's testimony is limited to the medical conclusions she formed during her assessment and treatment of plaintiff. Goodman, 644 F.3d at 826 ("[A] treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the course of treatment."). Daugherty may not testify as to the facts of plaintiff's alleged retaliation claims, or the alleged conduct of defendant.

Accordingly, defendant's second motion in limine is **DENIED.**

### C. Defendant's Motion in Limine 3 to Exclude Lay Testimony Regarding Plaintiff's Diagnosis and The Causes of His Alleged Emotional Distress

Defendant also moves to exclude lay testimony from plaintiff and his wife regarding plaintiff's "diagnosis of unspecified anxiety disorder and the causes of his alleged emotional distress." MIL 3 at 1. Defendant argues that because a lay witness' testimony must stem from the witness' perception, and "cannot be based on scientific, technical, or other specialized knowledge within the scope of Rule 702," certain opinions

---

[4] Although the parties have not raised the issue, the Court notes that the rules governing expert testimony of physicians can apply to non-physicians, where they are duly trained. See Dang Vang v. Vang Xiong X. Toyed, 944 F.2d 476, 483 (9th Cir. 1991) (affirming the admissibility of expert testimony by clinical social workers where "[n]o one asserted that these experts were unqualified in the mental health field or that they had not had sufficient contact with the appellees to comment on their condition").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL            'O'

| Case No. | 2:17-cv-02538-CAS-SSx | Date | December 3, 2018 |
| Title | DAVID LILLIE v. MANTECH INT'L. CORP. ET AL. | | |

about medical diagnoses and causation are outside the subject matter for lay witness. MIL 3 at 2 (citing <u>Hahn v. Minnesota Beef Indus., Inc.</u>, No. CIV.002282 RHK (SRN), 2002 WL 32658476, at *3 (D. Minn. May 29, 2002)("Depression and anxiety disorder are complex injuries, requiring expert (as opposed to lay) testimony regarding diagnosis and causation.")). Alternatively, defendant argues that all hearsay statements, namely where plaintiff repeats the states of his clinicians, must be excluded s "classic hearsay." MIL 3 at 4. Plaintiff responds that that plaintiff and his wife may testify to plaintiff's emotional distress, provided that their opinions are based on their rational perception and help the fact-finder. Opp'n 3 at 2 (citing Fed. R. Evid. 701 (non-expert witnesses may offer opinions and draw inferences so long as they are "limited to those opinions or inferences which are . . . rationally based on the perception of the witness")).

Defendant is correct that Rule 701 has been used to bar lay witnesses from testifying as to their opinion on causation where such a determination would require the experience of an expert. See <u>Boren v. Harrah's Entm't Inc.</u>, No. 2:08-CV-00215-GMN, 2010 WL 4340641, at *2 (D. Nev. Oct. 26, 2010); <u>Hovsepian v. State Farm Mut. Auto. Ins. Co.</u>, No. CV-09-08929 MMM (PLAx), 2011 WL 13213900, at *10 (C.D. Cal. Jan. 12, 2011) ("Courts frequently hold that lay witnesses cannot testify regarding causation where determining the cause of a particular incident or occurrence is beyond common experience."). Similarly, lay witness may not testify as to medical diagnoses. <u>Tobeler v. Colvin</u>, 749 F.3d 830, 833 (9th Cir. 2014) (quoting <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir.1996))("Under our case law, lay witness testimony is 'incompetent' when it consists of a medical diagnosis, because 'medical diagnoses are beyond the competence of lay witnesses" to make.'"). Thus, to the extent that defendant seeks to exclude medical opinions as to the causation of plaintiff's alleged emotional distress and any diagnoses, the Court **GRANTS** defendant's motion.

However, the case law is clear that plaintiff may testify regarding his emotional distress and medically-related experiences under Rule 701. "Just because a lay witness cannot testify about his opinion as to the causation of the emotional distress does not mean that a plaintiff cannot testify about the surrounding facts which prove a causal link between the alleged wrong and the alleged damage, even without an expert." <u>Boren</u>, 2010 WL 4340641, at *2; see also <u>Jan. v. Dr Pepper Snapple Grp., Inc.</u>, 594 F. App'x 907, 910–11 (9th Cir. 2014) (An expert witness is "not required to establish that [plaintiff] experienced mental distress and depression for purposes of noneconomic damages. [Plaintiff] was entitled to prove the latter type of damages by testifying about his own perceptions."). Plaintiff's wife may similarly testify regarding her perceptions of plaintiff's emotional state. "Any lay witness who is familiar with another person's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-02538-CAS-SSx | Date | December 3, 2018 |
| Title | DAVID LILLIE v. MANTECH INT'L. CORP. ET AL. | | |

general demeanor would be competent to testify regarding changes in that demeanor or commonly recognized signs sadness or agitation." Burke v. City of Santa Monica, No. CV-09 02259 MMM (PLAx), 2011 WL 13213593, at *20 (C.D. Cal. Jan. 10, 2011) (citing Cole v. United States, 327 F.2d 360, 361 (9th Cir. 1964) ("[A] witness need not be an expert in order to draw a conclusion that a person is distraught who has suddenly grown pale and is shaking.")). A wife would surely be suitable familiar with her husband to speak to any changes.

Accordingly, to the extent that defendant seeks to exclude medical opinions as to the causation of plaintiff's alleged emotional distress and any diagnoses, defendant's motion is **GRANTED**. Otherwise, this third motion is denied.

### D. Defendant's Motion in Limine 4 to Preclude Plaintiff from Offering any Evidence Regarding JPL's Alleged Non-Compliance in Response to Subpoenas

Defendant's fourth motion in limine seeks to exclude any evidence regarding non-party JPL's purported non-compliance with plaintiff's subpoenas. MIL 4 at 1. Plaintiff worked on a contracting project for JPL as part of his employment with defendant, and defendant "anticipates that plaintiff will attempt to mislead and confuse the jury by accusing or inferring that [defendant] somehow encouraged JPL to disregard the subpoenas." Id. at 2. Defendant argues that evidence that JPL allegedly failed to respond to the subpoenas should be excluded because it is irrelevant and prejudicial to defendant. Id. at 3.

Plaintiff does not oppose this motion. Accordingly, the Court **GRANTS** defendant's fourth motion in limine to preclude plaintiff from offering evidence regarding JPL's alleged non-compliance to subpoenas.

### E. Defendant's Motion in Limine 5 to Exclude Testimony from Plaintiff's Expert Richard Fettig

Defendant's final motion in limine seeks to exclude testimony from plaintiff's non-retained expert Richard Fettig ("Fettig"). Fettig is an engineer who runs a business called FREE, Inc., which provides contract engineering services to businesses including JPL and Lockheed Martin Corporation ("Lockheed"). MIL 5 at 2. Fettig was allegedly present at a July of 2014 "kick-off" meeting, which plaintiff also attended. Id. Plaintiff alleges that immediately following that meeting, a JPL employee told plaintiff, Fettig and others that defendant's employees could not access the proprietary information of third-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-02538-CAS-SSx | Date | December 3, 2018 |
| Title | DAVID LILLIE v. MANTECH INT'L. CORP. ET AL. | | |

party contractor Lockheed, and plaintiff allegedly understood this to indicate that he should not have access to Lockheed's proprietary information unless there was a NDA between defendant and Lockheed. Dkt. 50 ("Plaint. Stat. of Fact ") No. 15 – 20. Pursuant to plaintiff's expert disclosures, Fettig is expected to provide testimony regarding (1) Fettig's experiences with defendant, JPL, and Lockheed, in relation to this lawsuit; (2) the July 2014 kick-off meeting, which Fettig attended; (3) Fettig's experience obtaining NDAs with Lockheed; and (4) expert opinion on "what NDA are, what NDA are used for, why NDA are used, what NDA consist of, how NDA are obtained, and how easy or difficult they are to obtain." Plaintiff's Expert Discl. ¶ 1.

Defendant contests Fettig's ability to provide expert testimony, arguing that Fettig's experience working with JPL and Lockheed, and his having entered into NDA agreements do not render him an "expert" on these topics under Rule 702. MIL 5 at 4 (citing Daubert, 43 F.3d at 1316 (requiring expert's findings to be "based on sound science, and this will require some objective, independent validation of the expert's methodology")). Defendant also argues that Fettig's testimony is irrelevant. MIL 5 at 5. Plaintiff appears to concede that Fettig should not testify as an expert, but still argues that Fettig should testify as a percipient witness. Opp'n 5 at 3. "Fettig can provide relevant testimony about what transpired at the Kick-Off meeting, the Impromptu Meeting [immediately following the kick-off meeting], and his company Free, Inc. entering into an NDA with Lockheed." Id.

The Court understands that Fettig was present at the July 2014 kick-off meeting, and as a lay witness, he can testify to the events that he witnessed at that meeting. At oral argument, counsel for defendant voiced concern that Fettig's testimony would include hearsay statements if he attempted to testify to the statements made by JPL employees. The Court reserves ruling on hearsay objections when made at the time of trial.

However, the Court concludes that Fettig may not offer testimony as to his entering into NDAs with Lockheed and JPL. Fettig's and plaintiff's relationships with JPL and Lockheed seemingly differed: Fettig owns and operates a company and thus ostensibly directly negotiated with JPL and Lockheed to obtain appropriate contracts. Plaintiff worked for defendant, and defendant, not plaintiff, appears to have negotiated the contracts with its clients, including JPL and Lockheed. The Court cannot hold mini-trials on the individual NDA policies of all the companies with whom Fettig entered into NDA and confidentiality agreements. Such testimony would divert the present litigation without providing probative evidence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | **CIVIL MINUTES – GENERAL** | | **'O'** |
| Case No. | 2:17-cv-02538-CAS-SSx | Date | December 3, 2018 |
| Title | DAVID LILLIE v. MANTECH INT'L. CORP. ET AL. | | |

Accordingly, the Court **GRANTS** defendant's motion in limine 5 in so far as it seeks a determination that Fettig may not testify as an expert witness. The Court **DENIES** defendant's motion to the extent that Fettig will be permitted to testify, as a lay witness, about what he witnessed at the July 2014 kick-off meeting. Fettig may not testify about his NDAs with other companies.

## IV. CONCLUSION

In accordance with the foregoing, defendant's motion in limine 2 is **DENIED**. To the extent that defendant seeks to exclude lay testimony as to medical opinions about causation or diagnosis, defendant's motion in limine 3 is **GRANTED**. Otherwise, it is denied. Motion in limine 4 is **GRANTED**. Defendant's motion in limine 5 is **GRANTED** in part and **DENIED** in part. The Court requests supplemental briefing on defendant's motion in limine 1.

IT IS SO ORDERED.

|  |  | 00 | : | 16 |
|---|---|---|---|---|
|  | Initials of Preparer | | CMJ | |